(No. 57806.—

THE PEOPLE *ex rel.* E. ALLEN BERNARDI, Director of Labor, Appellant, v. LEARY CONSTRUCTION COMPANY, INC., *et al.*, Appellees.

*Opinion filed April 4, 1984.—Rehearing denied June 29, 1984.*

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant.

Martin H. Katz, of Katz, McAndrews, Durkee, Balch & Lefstein, of Rock Island, for appellee Leary Construction Company, Inc.

Stanley L. Morris, of Pfeifer & Kelty, P.C., of Springfield, for appellee Village of Roanoke.

Lester Asher and Donald W. Cohen, of Chicago (Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., of counsel), for *amicus curiae* Illinois State Federation of Labor & Congress of Industrial Organizations *et al.*

JUSTICE WARD delivered the opinion of the court:

On August 17, 1981, the appellee Leary Construction Company, Inc. (Leary), an Illinois corporation, entered into an agreement with the appellee village of Roanoke (the village) to paint the village's water tower and perform repairs on it. On February 11, 1982, the Director of the Illinois Department of Labor (the Department), the appellant, filed a complaint in the circuit court of Woodford County against Leary and the village alleging violations of "An Act regulating wages of laborers, mechanics and other workers employed in any public works ***" (the Prevailing Wage Act) (Ill. Rev. Stat. 1981, ch. 48, par. 39s–1 *et seq.*) and "An Act to give preference in the construction of public works ***" (the Preference

Act) (Ill. Rev. Stat. 1981, ch. 48, par. 269 *et seq.*) and seeking an injunction, a declaratory judgment, and damages. (There is no question on this appeal concerning the Prevailing Wage Act.)

The appellees filed motions to dismiss the counts of the complaint relating to the Preference Act, contending that the statute denied rights assured them under the privileges and immunities clause of the Constitution of the United States. U.S. Const., art. IV, sec. 2.

On March 23, 1982, the circuit court held that the Preference Act did violate the privileges and immunities clause and dismissed the appellant's claim under the Act. The appellant filed a notice of appeal to this court under Supreme Court Rule 302(a) (87 Ill. 2d 302(a)).

The Preference Act in the part pertinent here provides:

> "Sec. 3. Every person who is charged with the duty, either by law or contract, of constructing or building any public works project or improvement for the State of Illinois or any political subdivision, municipal corporation or other governmental unit thereof shall employ only Illinois laborers on such project or improvement, and every contract let by any such person shall contain a provision requiring that such labor be used: Provided, that other laborers may be used when Illinois laborers as defined in this Act are not available, or are incapable of performing the particular type of work involved, if so certified by the contractor and approved by the contracting officer." (Ill. Rev. Stat. 1981, ch. 48, par. 271.)

In *People ex rel. Holland v. Bleigh Construction Co.* (1975), 61 Ill. 2d 258, this court held that the Preference Act was not violative of the privileges and immunities clause of the Constitution. The appellees contend that the decision in *Hicklin v. Orbeck* (1978), 437 U.S. 518, 57 L. Ed. 2d 397, 98 S. Ct. 2482, in effect has overruled the holding in *Bleigh Construction*, and requires that we declare our statute to be unconstitutional. The appellant ar-

gues that the decision in *Hicklin* is distinguishable, and that the Preference Act continues to represent a constitutional exercise of State power.

In *People ex rel. Holland v. Bleigh Construction Co.* (1975), 61 Ill. 2d 258, this court first considered the constitutionality of the Preference Act. (Ill. Rev. Stat. 1973, ch. 48, par. 269.) Although the court held that portions of the Act were unconstitutional, it upheld the Act's preference for Illinois residents over nonresidents based on "simple residency," declaring that it did not violate, *inter alia*, the privileges and immunities clause.

In holding that the Act did not violate the privileges and immunities clause, this court declared that the purpose of the legislation was "to help Illinois residents find employment," and that "the State has a valid interest in promoting employment for its residents." (*People ex rel. Holland v. Bleigh Construction Co.* (1975), 61 Ill. 2d 258, 272-73.) The court concluded that "[t]he 'degree of discrimination' in preferring resident laborers over nonresident laborers on public works projects 'bears a close relation' to this valid purpose." 61 Ill. 2d 258, 273.

Subsequent to *Bleigh Construction*, the Supreme Court in *Hicklin v. Orbeck* (1978), 437 U.S. 518, 57 L. Ed. 2d 397, 98 S. Ct. 2482, held that the "Alaska Hire" statute violated the privileges and immunities clause. Enacted in 1972, the "Alaska Hire" statute gave preference to Alaska residents for employment arising out of oil and gas leases in which the State was the lessor. In this regard, the statute required that " 'all oil and gas leases, easements or right-of-way permits for oil or gas pipeline purposes, unitization agreements, or any renegotiation of any of the preceding to which the state is a party' contain a provision 'requiring the employment of qualified Alaska residents' in preference to nonresidents." 437 U.S. 518, 520, 57 L. Ed. 2d 397, 401, 98 S. Ct. 2482, 2484.

More broadly, however, the statute also extended the

resident requirement to *"all employment* which is a *result of* oil and gas leases [and] easements," including a lessee's *"supplier of* his contractor or subcontractor." (Emphasis added.) (Alaska Stat. Ann. sec. 38.40.050(a) (1977).) The Supreme Court first noted that any assumption that a State ever could properly attempt to alleviate its unemployment problem by requiring private employers to discriminate against nonresidents was "dubious." Even assuming it constitutionally could do so, the court said, the State had nevertheless failed to show that nonresidents were "a source" of the "evil" of unemployment. And even if it were assumed further that nonresident labor was the cause of unemployment, the discrimination directed by the statute failed to bear a substantial relationship to the "evil" the nonresidents supposedly presented.

Thus, the *Hicklin* decision provided a two-part test for State actions that infringe upon rights protected by the privileges and immunities clause. First, the State must identify nonresidents as being a "peculiar source of evil" at which the statute is directed. Second, the discrimination must bear a substantial relationship to the evil that nonresidents present.

We would observe first that the type of discrimination involved here is within the scope of the privileges and immunities clause. The subject of one's livelihood invokes the protection of the clause:

> "[T]he protection of the Clause is strongly supported by this Court's decisions holding violative of the Clause state discrimination against nonresidents seeking to ply their trade, practice their occupation, or pursue a common calling within the State." *Hicklin v. Orbeck* (1978), 437 U.S. 518, 524, 57 L. Ed. 2d.397, 404, 98 S. Ct. 2482, 2487.

Next, we conclude that the Preference Act does not meet the requirements set out in *Hicklin*. There is nothing in the record, including the complaint itself, to show that nonresident laborers are a cause of unemployment in Illi-

nois. Because no relationship has been established between nonresident employment on public works projects and resident unemployment, the nonresident laborers cannot be considered a "peculiar source" of the evil of unemployment. And because nonresident laborers have not been identified as a "source" of unemployment, the statute's preference or discrimination cannot bear a "substantial relationship" to the degree of danger or evil that the nonresidents present.

The appellant maintains, however, that the Preference Act is not unconstitutional because under it the State or other governmental units act as a "market participant" in contracting for public works projects. The appellant says that the Supreme Court applied this reasoning recently in *White v. Massachusetts Council of Construction Employers, Inc.* (1983), 460 U.S. 204, 75 L. Ed. 2d 1, 103 S. Ct. 1042, to uphold an executive order of a mayor which was similar to the Preference Act. The "market participant" doctrine, however, is relevant only when a State's action is being challenged under the Constitution's commerce clause. A State or other governmental unit will be said to be affecting commercial transactions as a "market participant" when it is a party to the regulated transaction. (See *White v. Massachusetts Council of Construction Employers, Inc.* (1983), 460 U.S. 204, 75 L. Ed. 2d 1, 103 S. Ct. 1042.) This usually occurs when the State is acting as a buyer or seller. If the State is found to be a market participant, then the State's behavior need not be scrutinized and no "independent justification" for the State action is required. (*Hughes v. Alexandria Scrap Corp.* (1976), 426 U.S. 794, 809, 49 L. Ed. 2d 220, 231, 96 S. Ct. 2488, 2497.) Because a "market participant" determination is irrelevant in a case which is litigated under the privileges and immunities clause, the appellant's reliance on the "market participant" analysis in *White v. Massachusetts Council of Construction Employers, Inc.* (1983), 460 U.S. 204, 75 L. Ed. 2d 1,

103 S. Ct. 1042, is misplaced.

In *White*, the mayor of Boston issued an executive order which required that all city construction projects were to be performed by a work force consisting of no less than one-half Boston residents. The court, referring to *Hughes v. Alexandria Scrap Corp.* (1976), 426 U.S. 794, 49 L. Ed. 2d 220, 96 S. Ct. 2488, determined that the relevant inquiry was whether the city was a "market participant." The court held that the city was a market participant because it was a contracting party in all of the regulated transactions, and thus the city had not violated the commerce clause. Whether the mayor's order violated the privileges and immunities clause was not passed upon by the Supreme Judicial Court of Massachusetts or by the United States Supreme Court.

Under the privileges and immunities clause, one factor in evaluating whether a State's discriminatory action can be constitutionally justified is the State's "proprietary interest" in the activity. (See *Hicklin v. Orbeck* (1978), 437 U.S. 518, 57 L. Ed. 2d 397, 98 S. Ct. 2482; *Baldwin v. Fish & Game Com.* (1978), 436 U.S. 371, 56 L. Ed. 2d 354, 98 S. Ct. 1852.) A State's "proprietary interest" can arise from ownership of a natural resource or from expenditure of State funds, such as its funding of public works projects. The appellant claims that the State's proprietary interest in the activity covered by the Preference Act, *i.e.*, the expenditure of funds, justifies the preference or discrimination prescribed for residents by the statute. The appellant contends that the proprietary-interest factor was not dispositive in *Hicklin* only because the "Alaska Hire" statute sought to regulate the actions of private employers not connected with the Alaskan oil leases, *i.e.*, activity beyond the scope of Alaska's proprietary interest. Our preference statute, the appellant argues, regulates only activity of private employers directly connected with public works projects, and therefore the proprietary-inter-

est factor is dispositive and the two-part test should not be applied here. The appellants do not read *Hicklin* properly. Because the Preference Act's discrimination does not extend beyond activity in which Illinois has a proprietary interest does not mean that the two-part *Hicklin* test is inapplicable here. The application of the two-part test in *Hicklin* was not grounded simply on the fact that the "Alaska Hire" statute would extend to private employers not connected with the Trans-Alaskan Pipeline. Although the *Hicklin* court referred to a State's proprietary interest as being "often a crucial factor," it is clear that the factor would not be dispositive where the discrimination interfered with a "basic and essential" right. (See *Baldwin v. Fish & Game Com.* (1978), 436 U.S. 371, 56 L. Ed. 2d 354, 98 S. Ct. 1852.) Where a basic and essential right of a nonresident, as the right to pursue one's trade, is involved, the two-part test must be satisfied.

The conclusion we reach here is consistent with recent decisions in several jurisdictions holding resembling preference statutes unconstitutional under the privileges and immunities clause. *Laborers Local Union No. 374 v. Felton Construction Co.* (1982), 98 Wash. 2d 121, 654 P.2d 67; *Neshaminy Constructors, Inc. v. Krause* (1981), 181 N.J. Super. 376, 437 A.2d 733; *Salla v. County of Monroe* (1979), 48 N.Y.2d 514, 399 N.E.2d 909, 423 N.Y.S.2d 878, *cert. denied* (1980), 446 U.S. 909, 64 L. Ed. 2d 262, 100 S. Ct. 1836.

We would add that our holding is consistent with the latest expression of the Supreme Court regarding preference laws and the privileges and immunities clause. See *United Building & Construction Trades Council v. Mayor of Camden* (1984), 465 U.S. 208, 79 L. Ed. 2d 249, 104 S. Ct. 1020.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*