[No. S021805. Feb. 24, 1992.]

CHARLES DEL MONTE et al., Plaintiffs and Appellants, v.
PETE WILSON, as Governor, etc., et al., Defendants and Respondents.

COUNSEL

Litt & Stormer, Hadsell & Stormer, Barbara Hadsell, John T. McTernan, Panayata Nanopoulos, Miller & Walter, Nora Quinn, Jeffrey Erlich and Paul Steven Miller for Plaintiffs and Appellants.

Howell Y. Jackson, Arnulfo Hernandez, Jr., Douglas C. Wills and Charles G. Bates for Defendants and Respondents.

OPINION

MOSK, J.—

I

We are to decide whether the distribution of veterans' benefits conditioned on California residency at a fixed point in the past violates the federal constitutional right to equal protection of the laws. We conclude that we are constrained by recent decisions of the United States Supreme Court to hold the statutes providing for such a distribution are unconstitutional.

II

Chapter 6 of the Military and Veterans Code, entitled "State Benefits for Veterans," provides for veterans' benefits including tuition and living expenses for students (Mil. & Vet. Code, § 980 et seq.), farm and home loan assistance (*id.*, §§ 985 et seq., 987.50), and disaster indemnity (§ 989.4 et

seq.).[1] Defining eligibility for benefits under the chapter as a whole, section 980 provides in pertinent part:

"(a)  As used in this chapter, 'veteran' means any of the following:

"(1)  Any citizen of the United States who served in the active military, naval, or air service of the United States on or after April 6, 1917, and prior to November 12, 1918; received an honorable discharge or was released from active duty under honorable conditions; *was, at the time of entry into active duty, a native of or a bona fide resident of the state or, if a minor at that time, entered active duty while in this state; and had lived in this state for six months immediately preceding entry into active duty.*

"(2)  Any person who served in the active military, naval or air service of the United States for a period of not less than 90 consecutive days or was discharged from the service due to a service-connected disability within that 90-day period; received an honorable discharge or was released from active duty under honorable conditions; *was at the time of entry into active duty a native of or bona fide resident of this state or, if a minor at that time, entered active duty while in this state and had lived in this state for six months immediately preceding entry into active duty;* and performed any portion of that service during any of the following periods:

"(A)  On or after December 7, 1941, and prior to January 1, 1947.

"(B)  On or after June 27, 1950, and prior to February 1, 1955.

"(C)  On or after August 5, 1964, and prior to May 8, 1975.

"(D)  On or after August 2, 1990, to and including the date on which the territories in and around the Arabian Peninsula cease to be designated as a place where the armed forces of the United States are engaged in combat, as described in Executive Order 12744 of the President of the United States. It is the intent of the Legislature, in enacting this subparagraph, that the benefits provided by this chapter shall be available to all veterans who were on active duty in the armed forces of the United States or who were called to active duty in the reserves or National Guard during the pendency of the deployment of forces for Operation Desert Shield or Desert Storm, which resulted in Executive Order 12744, irrespective of whether these veterans served overseas or in the United States.

"(E)  At any time, in a campaign or expedition for service in which a medal has been authorized by the government of the United States, regardless of the number of days served on active duty.

"(3)  Any member of the reserves or National Guard who is called to, and released from, active duty, regardless of the number of days served; called

---

[1]All statutory references are to the Military and Veterans Code unless otherwise indicated.

during any period when a presidential executive order specifies the United States is engaged in combat; received an honorable discharge or was released from active duty under honorable conditions; *was at the time of entry into active duty a native of, or bona fide resident of this state or, if a minor at that time, entered active duty while in this state and had lived in this state for six months immediately preceding entry into active duty.*" (Italics added.)

In a separate chapter providing for education benefits for veterans' dependents, section 890 defines the term "veteran" as follows: "any person who served in the Army, Navy, or Marine Corps of the United States and was killed in action or died as a result of war service in the World War since April 6, 1917; (2) any member of the Army, Navy, Coast Guard or Marine Corps of the United States, or any of their auxiliaries who was killed in action in World War II on or after December 7, 1941, and prior to January 1, 1947, or who died at any time as a result of war service during such period; (3) any member of the armed forces of the United States who was killed in action during any period of hostilities in which the United States is engaged, or who died or was totally disabled at any time as a result of active service during any such period or during the induction period; or (4) any person who, at the time of entry into the armed forces of the United States was a resident of this state and was subsequently declared by the United States government to be missing in action, captured in the line of duty by hostile forces, or forcibly detained or interned in the line of duty by a foreign government or power."

The Budget Act for many years has specified that no funds appropriated to provide assistance to veterans' dependents under section 890 et seq. shall be expended for the assistance of dependents of veterans not meeting the requirements of section 980. (See, e.g., 1990-1991 Final Budget Summary, Item No. 1960-001-001, pp. 72-73; 1989-1990 Final Budget Summary, Item No. 1960-001-001, p. 103.)

Plaintiffs are veterans of World War II, the Korean War and the Vietnam War, and their dependents.[2] Respondent Department of Veterans Affairs refused them veterans' benefits on the ground that they had not been California residents at the time they entered military service.[3] On May 6, 1988, plaintiffs filed their petition for writ of mandate and complaint for declaratory and injunctive relief, and moved for class certification. They alleged that the restriction of veterans' benefits to persons who were California residents at the time they joined the military service was a violation of

---

[2] Also named as plaintiffs and asserting standing as taxpayers are the spouse of a veteran and three veterans who joined active service as residents of other states.

[3] Also named as respondents are the Governor of the State of California; Jesse Ugalde, Director of the Department of Veterans Affairs; and the State of California. This case was previously entitled *Del Monte* v. *Deukmejian.*

the federal constitutional guaranty of equal protection and the right to travel. They also claimed that the limitation on expenditures in the Budget Act was a violation of the single-subject rule of the California Constitution, and that the arbitrary methods by which the Department of Veterans Affairs had considered their claims violated the federal constitutional guaranty of due process.[4]

The trial court found that plaintiffs had standing, but entered a judgment denying the petition and rejecting plaintiffs' constitutional claims. The Court of Appeal reversed and remanded with directions to issue the peremptory writ of mandate.[5] It held that the distinction drawn by the statutes violates the equal protection clause of the federal Constitution. It did not reach the question whether the statutes also violate the federal constitutional right to travel, or whether the item in the Budget Act violates the single-subject rule of the California Constitution. It held that the Department of Veterans Affairs failed to provide adequate procedural safeguards in denying benefits to dependents of veterans, and that the Military and Veterans Code must be interpreted to extend the veterans' procedural safeguards to applicants who are the dependents of veterans. Respondents petitioned for review, challenging only the holding that the statutes violate the federal constitutional guaranty of equal protection.

### III

As we are called upon to determine whether the statutory scheme at issue here violates the equal protection clause of the United States Constitution, we reiterate the fundamental tenet of our jurisprudence that unless a statute impairs fundamental rights or involves an inherently suspect classification, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." (*Cleburne* v. *Cleburne Living Centre* (1985) 473 U.S. 432, 439 [87 L.Ed.2d 313, 320, 105 S.Ct. 3249]; see also *New Orleans* v. *Dukes* (1976) 427 U.S. 297, 303 [49 L.Ed.2d 511, 517, 96 S.Ct. 2513].)

Despite this established rule of judicial deference to legislative classifications, we observe that in recent years the United States Supreme

---

[4]Plaintiffs' complaint originally challenged the constitutionality of article XIII, section 3, subdivision (o), of the California Constitution, which at the time of the filing of the complaint provided for a property tax exemption for veterans who had been residents of California before November 3, 1964. Proposition 93 on the November 1988 General Election ballot proposed deleting the residency requirement because it was unconstitutional under *Hooper* v. *Bernalillo County Assessor* (1985) 472 U.S. 612 [86 L.Ed.2d 487, 105 S.Ct. 2862] (hereafter *Hooper*), and *Attorney General of N. Y.* v. *Soto-Lopez* (1986) 476 U.S. 898 [90 L.Ed.2d 899, 106 S.Ct. 2317] (hereafter *Soto-Lopez*). (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 1988), p. 61.) The measure passed, and the complaint was amended to omit the claim.

[5]Respondents did not renew their claim, either in the Court of Appeal or in this court, that plaintiffs lack standing or that their claim is barred by the statute of limitations.

Court has struck down several state statutes that distinguished between long-term residents and recent migrants to a state. The high court invalidated statutes that employed fixed-point residency requirements to determine eligibility for benefits, maintaining that the very purpose of these statutes to prefer or reward established residents is illegitimate. In three cases the court analyzed the matter purely as a question of equal protection; in the fourth, a divided majority of the court could not agree whether such a statute also violated the constitutional right to travel, but struck down the state statute nonetheless. We feel constrained by these decisions to declare unconstitutional the statutes challenged here.

In *Zobel* v. *Williams* (1982) 457 U.S. 55 [72 L.Ed.2d 672, 102 S.Ct. 2309] (hereafter *Zobel*), residents of Alaska attacked a statute that distributed income derived from exploitation of its natural resources to its residents in amounts dependent upon the duration of their residence. The legislation granted residents one dividend unit from the state's natural resources fund for every year of residence after 1959, when Alaska joined the union.

The court determined that the statute did not reasonably further a legitimate state purpose. It determined that the justifications offered by the state were not rationally related to the distinction between recent and long-term residents. The asserted objective of tempting people to migrate to Alaska and stay was not served by the statute, the court reasoned, because the statute placed a premium on decisions to migrate that were made during the 21 years before the statute was enacted. Nor did the court accept as rational the state's claim that the statute was intended to further the prudent management of the natural resources fund. Again, the court pointed out that a retroactive premium for long-term residents could not promote prudent management of a fund not yet in existence during most of that residency.

Of most moment to us is the court's treatment of the last justification offered by the State of Alaska. The state claimed that the statutory scheme rewarded residents for past contributions. The court flatly stated that this objective "is not a legitimate state purpose." (*Zobel, supra,* 457 U.S. at p. 63 [72 L.Ed.2d at p. 679].) The court quoted its earlier decision in *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 632-633 [22 L.Ed.2d 600, 614, 89 S.Ct. 2465], striking down a one-year residency requirement for receipt of welfare benefits: " 'Appellants' reasoning would . . . permit the State to apportion all benefits and services according to the past tax [or intangible] contributions of its citizens. *The Equal Protection Clause prohibits such an apportionment of state services.*' " (Italics and bracketed material supplied by the court in *Zobel, supra,* 457 U.S. at p. 63 [72 L.Ed.2d at p. 679].)

Concluding that Alaska had shown no *valid* state interests that are rationally served by the distinction, the *Zobel* court outlined the reductio ad

absurdum of the state's position. "If the states can make the amount of a cash dividend depend on length of residence, what would preclude varying university tuition on a sliding scale based on years of residence—or even limiting access to finite public facilities, eligibility for student loans, for civil service jobs, or for government contracts by length of domicile? Could states impose different taxes based on length of residence? Alaska's reasoning could open the door to state apportionment of other rights, benefits, and services according to length of residency. It would permit the states to divide citizens into expanding numbers of permanent classes. Such a result would be clearly impermissible." (*Zobel, supra,* 457 U.S. at p. 64 [72 L.Ed.2d at p. 680], fns. omitted.)

Justice Brennan concurred in a separate opinion, joined by Justices Marshall, Blackmun, and Powell, arguing that the Alaska statute violated not only the equal protection clause but also the constitutional right to travel. Justice O'Connor concurred in the judgment, arguing that Alaska's scheme violated the privileges and immunities clause of the United States Constitution. Justice Rehnquist, the lone dissenter, argued that economic regulation is entitled to great deference, and that the justifications offered by the state were sufficient to establish that the distribution scheme was rationally based.

The next case in the series is *Hooper, supra,* 472 U.S. 612, involving a preferential property tax exemption for veterans of the Vietnam War who had been residents of the State of New Mexico since May 8, 1976. The court observed that the statute created two classes of Vietnam War veterans: those who established residency before May 8, 1976, who qualified for the exemption, and those who arrived later, and thus did not qualify for the exemption.

The state asserted two justifications for the distinction, but the court found neither persuasive. The court rejected as irrational the claim that the statute encouraged veterans to settle in the state. The New Mexico Legislature enacted the eligibility date long after 1976: migration cannot be encouraged retroactively. Indeed, potential migrants may actually be discouraged by the distinction in benefits created by the statute. (*Hooper, supra,* 472 U.S. at p. 619 [86 L.Ed.2d at p. 494].)

The state also argued that the statute was justified because it expressed the state's appreciation to "its own" for their military service. It is legitimate, said the high court, to compensate all veterans for their past contributions and for the disruption of their lives caused by military service. It is not legitimate, however, for the state to single out established residents and reward only them for their past contributions. (*Hooper, supra,* 472 U.S. at pp. 622-623 [86 L.Ed.2d at pp. 496-497].) "The State may not favor established residents over new residents based on the view that the State may take

care of 'its own,' if such is defined by prior residence. Newcomers, by establishing bona fide residence in the State, become the State's 'own' and may not be discriminated against solely on the basis of their arrival in the State after May 8, 1976." (*Id.* at p. 623 [86 L.Ed.2d at p. 496].)

The New Mexico statute made veterans who are recent arrivals members of a permanent category of second class citizens. "This discrimination on the basis of residence is not supported by any identifiable state interest; the statute is not written to benefit only those residents who suffered dislocation within the State's borders by reason of military service. *Zobel* made clear that the Constitution will not tolerate a state benefit program that 'creates fixed, permanent distinctions . . . between . . . classes of concededly bona fide residents, based on how long they have been in the State.' [Citation.] Neither the Equal Protection Clause, nor this Court's precedents, permit the State to prefer established resident veterans over newcomers in the retroactive apportionment of an economic benefit." (*Hooper, supra,* 472 U.S. at p. 623 [86 L.Ed.2d at pp. 496-497].)[6]

Justice Brennan noted that his concurrence was on the same basis as his concurrence in *Zobel, supra,* 457 U.S. 55 (*Hooper, supra,* 472 U.S. at p. 624 [86 L.Ed.2d at p. 497] (conc. opn. of Brennan, J.), while Justice Stevens, joined by Justices Rehnquist and O'Connor, dissented. The dissent insisted that it is legitimate to provide benefits to some but not all Vietnam veterans because the resources of the state are limited. (*Id.* at pp. 626-627 [86 L.Ed.2d at pp. 498-499] (dis. opn. of Stevens, J.).) It also argued that the legislation rationally attempted to ameliorate hardships experienced by veterans seeking to be reintegrated into civilian life. (*Id.* at p. 627 [86 L.Ed.2d at p. 499].)

In a third case, the Supreme Court invalidated a Vermont use tax exemption on out-of-state purchases of cars. (*Williams* v. *Vermont* (1985) 472 U.S. 14 [86 L.Ed.2d 11, 105 S.Ct. 2465].) Only a person who was a Vermont resident at the time of the purchase was eligible for the exemption; the court agreed with those who bought cars outside the state before they became Vermont residents that the distinction between new and old residents was a violation of the equal protection of the laws. Although it recognized that the highest level of deference is owed to state taxation schemes, the court found no legitimate purpose could be furthered by the challenged distinction. "A State may not treat those within its borders unequally solely on the basis of their different residences . . . . [R]esidence at the time of purchase is a

---

[6]*Hooper* reserved the question of the constitutionality of veterans' benefit statutes that condition eligibility on state residence at time of induction into the military, but implied that such statutes may also be unconstitutional. (*Hooper, supra,* 472 U.S. at pp. 621-622, fn. 11 [86 L.Ed.2d at pp. 495-496]; see also *Bunyan* v. *Camacho* (9th Cir. 1985) 770 F.2d 773, 776.)

wholly arbitrary basis on which to distinguish among present Vermont registrants . . . ." (*Id.* at p. 23 [86 L.Ed.2d at p. 19].) Justice Blackmun dissented, joined by Justices Rehnquist and O'Connor, arguing that the statute served legitimate ends.

In the most recent case to treat the problem of fixed-point residency requirements, six justices agreed that a system granting civil service preference points to veterans who entered active military service while residents of the State of New York violated the guaranty of equal protection of the laws. (*Soto-Lopez, supra,* 476 U.S. 898.) Four of the six justices agreed that the system also violated the constitutional right to travel. The plurality opinion reasoned that because the limitation of veterans' preference points to those who joined up from New York impaired the fundamental right to travel or migrate, a heightened level of scrutiny should apply to the statutory scheme. (*Id.* at pp. 905-906 [90 L.Ed.2d at p. 907].) The plurality opinion identified the interest in civil service preference points as substantial, and pointed out that the statutory scheme deprived veterans who had joined up outside New York of the preference permanently.

New York offered four arguments in justification of the distinction drawn by the statute: "(1) the encouragement of New York residents to join the Armed Services; (2) the compensation of residents for service in time of war by helping these veterans reestablish themselves upon coming home; (3) the inducement of veterans to return to New York after wartime service; and (4) the employment of a 'uniquely valuable class of public servants' who possess useful experience acquired through their military service." (*Soto-Lopez, supra,* 476 U.S. at p. 909 [90 L.Ed.2d at pp. 909-910].)

Because the statute impaired the fundamental right to travel, the plurality opinion analyzed whether the statute was narrowly drawn to use the least intrusive means to achieve a compelling state purpose. (*Soto-Lopez, supra,* 476 U.S. at pp. 909-910 [90 L.Ed.2d at p. 910].) As for the state's asserted justifications, because the preference applied to inductees as well as to enlistees, the court found the first justification hollow. The second justification was unavailing because the preference points were available long after a veteran's return from war. Third, "[t]he State's failure to limit the credit to enlistees recently returned to New York from war strongly suggests that the State's principal interest is simply in rewarding its residents for service to their country." (*Id.* at p. 910 [90 L.Ed.2d at p. 910].) Finally, all veterans, not just those who joined up from New York, possessed useful experience that could be valuable to the state. (*Id.* at p. 909 [90 L.Ed.2d at p. 910].)

Though the interest in rewarding residents for their service to the country may be compelling, it did not justify the challenged distinction. "Members

of the Armed Forces serve the Nation as a whole. While a serviceperson's home State doubtlessly derives indirect benefit from his or her service, the State benefits equally from the contributions to our national security made by other service personnel. 'Permissible discriminations between persons' must be correlated to 'their *relevant* characteristics.' [Citation.] Because prior residence has only a tenuous relation, if any, to the benefit New York receives from all Armed Forces personnel, the goal of rewarding military service offers no support for New York's fixed point residence requirement." (*Soto-Lopez, supra,* 476 U.S. at p. 911 [90 L.Ed.2d at pp. 910-911].)

Chief Justice Burger concurred in the judgment, maintaining that the New York statute failed to satisfy the rational basis test under the equal protection clause. (*Soto-Lopez, supra,* 476 U.S. at p. 913 [90 L.Ed.2d at p. 912] (conc. opn. of Burger, C. J.).) He maintained that the statute could not survive a rational basis analysis: a person cannot be encouraged to enlist by a statute passed after enlistment; as the plurality opinion noted, the statute extended to draftees as well as enlistees. To the extent the statute was intended to partially compensate residents for war-time service, "*Hooper* clearly rejected any such retroactive rewards targeting only past residents" because all veterans are equally deserving of benefits. (*Id.* at p. 914 [90 L.Ed.2d at p. 913] (conc. opn. of Burger, C. J.).) While the statute may have encouraged New York veterans to return to the state after service, it impermissibly discouraged other veterans from migrating to New York. (*Ibid.*) Finally, all veterans who were residents of New York, not just those who joined the military as New York residents, brought special skills to their employment. (*Id.* at p. 915 [90 L.Ed.2d at pp. 913-914].) Justice White agreed with Chief Justice Burger that the statute denied equal protection because "the classification it employs is irrational." (*Soto-Lopez, supra,* 476 U.S. at p. 916 [90 L.Ed.2d at p. 914] (conc. opn. of White, J.).)

Justice O'Connor wrote the lead dissenting opinion, joined by Justices Stevens and Rehnquist. She took the position she expressed in *Zobel, supra,* 457 U.S. at page 72 [72 L.Ed.2d at page 685] (conc. opn. of O'Connor, J.), that a state's desire to reward its citizens for past contributions is unconstitutional only when the execution of this goal would abridge the right to migrate, which she would locate in the privileges and immunities clause of article IV, section 2 of the United States Constitution. She found no violation of the equal protection clause in the New York scheme, and found that the statute would not have such an impact upon the right to travel as to require its invalidation under the privileges and immunities clause. (*Soto-Lopez, supra,* 476 U.S. at pp. 919-920 [90 L.Ed.2d at pp. 915-917] (dis. opn. of O'Connor, J.).) Justice Stevens wrote separately to argue that the narrower the minority of persons to whom a statute grants special privileges, the less

of a concern the statute should be, because "[i]n a democracy the majority will seldom treat itself unfairly." (*Id.* at p. 916 [90 L.Ed.2d at p. 914] (dis. opn. of Stevens, J.).)

The statutory scheme at issue here is similar to the New York statute. Benefits are available only to a certain class of resident veterans, that is, to those who were California natives or residents at the time they entered active military service. Other resident veterans, because they were not residents of the state at a fixed point in the past, are for all practical purposes permanently denied benefits. Thus, a disabled World War II veteran who moved to California shortly after the war would be ineligible for the benefits, no matter how long that veteran resided in the state, paid taxes here, and made other contributions to our society.

We must determine whether this classification is rationally related to a legitimate state purpose. Respondents claim that the distinction drawn by the statutes between veterans who were California natives or residents when they joined up and veterans who joined up from other states is justified because California may choose to "take care of its own." The high court has rejected this purpose as illegitimate. (*Soto-Lopez, supra,* 476 U.S. at pp. 911 (plur. opn. of Brennan, J.), 916 (conc. opn. of Burger, C. J.) [90 L.Ed.2d at pp. 911, 914]; *Hooper, supra,* 472 U.S. at p. 623 [86 L.Ed.2d at p. 496].) Respondents maintain that "California may feel quite properly that it has no obligation, moral or otherwise, to provide veterans' benefits to those who were citizens of another state when called to service, and that each state should determine how to take care of its own with regard to veterans' benefits." Our answer to this claim is simply that once a citizen becomes a bona fide resident of this state, he or she becomes the state's "own" to the same extent as a longer-term resident. (*Soto-Lopez, supra,* 476 U.S. at pp. 911 (plur. opn. of Brennan, J.), 915-916 (conc. opn. of Burger, C. J.) [90 L.Ed.2d at pp. 911, 913-914]; *Hooper, supra,* 672 U.S. at p. 623 [86 L.Ed.2d at p. 496].)

Respondents also assert that the statutory scheme is justified because it compensates and provides assistance to those who were residents when they made the sacrifice of entering active military service. Respondents claim that the scheme compensates those whose careers and lives are disrupted "while they are working and living in the state, and who choose to return to their home state after their military service where they must begin the difficult task of resuming those interrupted careers and lives, ill-prepared and to begin anew in a society and economy which may have changed dramatically during their absence and which may have left them far behind."

This contention, however well-meaning, was expressly rejected in *Hooper, supra,* 472 U.S. 612: "Those who serve in the military during wartime

inevitably have their lives disrupted; but it is difficult to grasp how New Mexico residents serving in the military suffered more than residents of other States who served, so that the latter would not deserve the benefits a State bestows for national military service. Moreover, the legislature provided this economic boon years after the dislocation occurred. Established state residents, by this time, presumably had become resettled in the community and the modest tax exemption hardly bears directly on the transition to civilian life long after the war's end. Finally, the benefit of the tax exemption continues for the recipient's life. The annual exemption, which will benefit this limited group of resident veterans long after the wartime disruption dissipated, is a continuing bounty for one group of residents rather than simply an attempt to ease the veteran's return to civilian life.

"Even assuming that the State may legitimately grant benefits on the basis of a coincidence between military service and past residence, the New Mexico statute's distinction between resident veterans is not rationally related to the State's asserted legislative goal. The statute is not written to require any connection between the veteran's prior residence and military service. Indeed, the veteran who resided in New Mexico as an infant long ago would immediately qualify for the exemption upon settling in the State at any time in the future regardless of where he resided before, during, or after military service." (*Hooper, supra,* 472 U.S. at pp. 621-622 [86 L.Ed.2d at pp. 495-496], fns. omitted.)

Thus, *Hooper, supra,* 472 U.S. 612, requires that we reject the justifications proffered by the state. Obviously the state may choose to honor and reward veterans, and thus may discriminate between veterans and nonveterans in the allocation of benefits. (*Id.* at p. 620 [86 L.Ed.2d at p. 495].) But a statute that divides veterans into two classes, with greater benefits for prior residents, cannot be justified. All current residents are California's "own"; the life of every veteran has been disrupted by active military service; veterans who joined the military as residents of California suffered no more than others who joined as residents of other states and subsequently migrated to California. And the state owes a debt of gratitude to every veteran, regardless of state of origin.

Furthermore, again as in *Hooper, supra,* 472 U.S. 612, the statutory scheme is not drawn in such a way as to promote reintegration into civilian life; its benefits may first be claimed up to 30 years after discharge. (§§ 986.01 [25 years], 987.57 [30 years].) The statutory scheme provides benefits far beyond the period of actual disruption and reintegration, even into the second generation. The benefit of a low-interest loan is not limited to the period after demobilization, but is available for a further 30 years after

discharge. Moreover, the benefit of the loan extends over the entire life of the mortgage. Further, the statute requires no connection between the veteran's prior residence and his or her military service; a native Californian veteran is apparently entitled to the benefits regardless of actual residence before entry into service. (§ 980, subd. (a)(2).)

Our scheme may be distinguished from the element of the New Mexico scheme attacked in *Hooper, supra,* 472 U.S. 612, in that it was not enacted long after the military conflict, but has been part of our law since 1943. Thus, unlike the benefits attacked in *Zobel, supra,* 457 U.S. 55, and *Hooper, supra,* 472 U.S. 612, it is not a completely retroactive bounty, but may have served to encourage residents to return to California after active service. Further, the modest educational benefit is more closely related to reintegration into the peacetime economy than a tax exemption. Nonetheless, it is available long after the period of reintegration—for a lifetime, in fact. As we have noted, the home and farm loan benefits may be applied for up to 30 years after discharge. The benefit for dependents of veterans cannot be justified as mitigating wartime disruption. The intent of the entire scheme, as the state frankly admits, is to benefit the state's "own." We can only conclude that it has been the role of the four Supreme Court cases discussed above to dismantle a provincial view of citizenship.

Respondents ask us to observe the usual rule that economic legislation is accorded wide deference when it is claimed that a statutory classification violates the equal protection clause. As commentators, and indeed the dissenting justices, have observed, the majority in *Zobel* and *Hooper* did not apply the deferential equal protection analysis usually extended to state statutes regulating economic affairs. (See Tribe, American Constitutional Law (1988) § 16-3, pp. 1441-1443, and fn. 16; Note, *State Parochialism, the Right to Travel, and the Privileges and Immunities Clause of Article IV* (1989) 41 Stan.L.Rev. 1557, 1588; Swierenga, *Still Newer Equal Protection: Impermissible Purpose Review in the 1984 Term* (1986) 53 U.Chi.L.Rev 1454; Neuman, *Territorial Discrimination, Equal Protection, and Self-Determination* (1987) 135 U.Pa.L.Rev. 261, 321; *Hooper, supra,* 472 U.S. at p. 627 [86 L.Ed.2d at p. 499] (dis. opn. of Stevens, J.); see also *Soto-Lopez, supra,* 476 U.S. at pp. 924-925 [90 L.Ed.2d at pp. 919-920] (dis. opn. of O'Connor, J.) Rather, the high court was mostly concerned to identify the central object of the statutes, that is, preferring long-term residents over recent migrants, as illegitimate. The plurality and concurring opinions in *Soto-Lopez* expressed the same view. The statutes considered here have the same basic flaw. We have been presented with no justification that would satisfy the concerns of the high court expressed in the cases discussed above.

Respondents seek to distinguish this case from *Zobel, supra,* 457 U.S. 55, and *Hooper, supra,* 472 U.S. 612, on the ground that "the purpose of

California's statute clearly is not to reward previous residents for past contributions, for it also provides benefits for veterans who now enter into active duty, and for current and future residents who may serve in a future military campaign." To the extent this argument refers to those who may serve in the future, it confuses the classes of similarly situated individuals who are being compared for the purpose of the equal protection analysis; we are comparing two classes of resident veterans, not present veterans and those who have not yet served. We agree with the Court of Appeal that respondents' argument cannot save the statute; a World War I or World War II veteran can hardly be expected to reenter active service at this late date, nor should that veteran be required to do so in order to receive the benefits flowing from the earlier service to our country. There is no legitimate justification for according benefits to those veterans who were earlier residents of California, but requiring veterans who arrived more recently to fight another war in order to qualify for the same benefits. Nor can we overlook the fact that many veterans, including two of the plaintiffs in this case, were totally disabled as a result of their wartime service and thus can never take advantage of respondents' unrealistic offer that they reenlist for active service in order to obtain the veterans benefits at stake here.

Respondents also ask us to disregard *Soto-Lopez, supra*, 476 U.S. 898, because the plurality and concurring opinions did not employ the same rationale in agreeing to strike down the statute there in issue. We are not persuaded. ■ "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds . . . .' " (*Marks* v. *United States* (1977) 430 U.S. 188, 193 [51 L.Ed.2d 260, 266, 97 S.Ct. 990.) Thus the decision of the high court should not be rejected as meaningless; at its narrowest, it at least rejects the New York statute as lacking a rational basis. And, as we have noted, the plurality and concurring opinions coincide at several points in rejecting the justifications offered by the state in support of its statute.

Respondents ask us to waive what they term the "policy of stare decisis" and to uphold the statutory scheme on the ground that it has been part of our state's law for many years, and has never before been judicially questioned. Such an approach is not within our power. ■ The high court is the arbiter of the federal constitutionality of state statutes (*Martin* v. *Hunter's Lessee* (1816) 14 U.S. (1 Wheat.) 304 [4 L.Ed. 97]), and its decisions interpreting the federal Constitution are the supreme law of the land. (*Cooper* v. *Aaron* (1958) 358 U.S. 1, 18 [3 L.Ed.2d 5, 17, 78 S.Ct. 1401].) Thus we must apply the doctrine fashioned by the United States Supreme Court regardless of the antiquity of our statutes.

We have considered the thoughtful decision of the trial court upholding the veterans' benefits scheme. The court reasoned that veterans who move to California after military service receive generous benefits from the federal government and these federal benefits assure that all veterans have the maximum freedom to migrate from state to state. The court asserted that some veterans who migrate to California after their military service are also eligible for some state veterans' benefits and that not all veterans who joined the service as California residents are eligible for the state benefits. Accordingly, the court concluded that not only do the statutes have only a minimal impact on the right to travel, but also the statutory scheme does not create two fixed categories of residents, one of which is treated as "second class."

We have examined the statutory scheme, and have concluded that the state benefits available to those who were not natives or residents of the state at the time of entering active military service are extremely limited. There is a provision for postgraduate study benefits for the child of a veteran of World War II who was killed in action, provided the child speaks two Chinese dialects and has not attained the age of 32 by December 1, 1969. (§ 897.) Section 32320 of the Education Code allows for a tuition waiver for dependents of low-income veterans, but the complaint alleges that no funds are allocated under this provision because of the Budget Act limitations of which plaintiffs complain. There is also a provision that a person of Japanese ancestry is considered a veteran if the person was a resident of California and was "evacuated" pursuant to Presidential Executive Order No. 9066 of February 1942, and a similar provision that the child of such a person is to be considered a native of California even if born elsewhere during the period of evacuation. (§§ 980.1, 980.2.) Finally, there is the provision noted above that a veteran who was not a resident at the time of joining active service may qualify as a California veteran by continuing or renewing active service while in the state. (§ 987.52.)

As we have said, these exceptions are too narrow to persuade us that the statutory scheme does not discriminate between established residents and more recent arrivals. Furthermore, the trial court appears to have taken the position of Justice O'Connor's dissenting opinion in *Soto-Lopez, supra,* 476 U.S. at pages 921-923 [90 L.Ed.2d at pages 917-919] (dis. opn. of O'Connor, J.). Like Justice O'Connor, it insists that the impairment of the right to migrate caused by the statute is not significant enough to invalidate the statute. She argued, too, that the New York scheme did not create permanent classes of persons who would always be treated differently; a veteran who was a recent migrant to New York could qualify for a civil service position without the benefit of veterans' points, and a long-time resident veteran might fail to qualify even with veterans' points. (*Ibid.*) This,

however, was the view of a dissenter. The majority in the four cases cited held that the allocation of benefits on the basis of prior residency violates the equal protection clause, on any of the justifications offered by the state here. The majority were concerned not just with immutable classes, but with the spectacle, viewed as foreign to the idea of the Union, that states could adopt a policy of viewing only long-term residents as the state's "own."

The trial court also emphasized the supplemental nature of the California veterans' benefits, asserting that the California home loan benefit cannot be claimed if similar federal benefits have been claimed. It also cited the provision of 26 United States Code section 143(d), limiting eligibility for state veterans' benefits to one who has not owned a home for three years or is buying a home in a designated target area. The court further pointed out that the benefits are not automatic even for veterans who joined up from California; section 986 sets out three levels of preference for benefits, starting with wounded or disabled veterans: "Such California legislation shows that the Cal Vet program is secondary, limited and narrower in benefit, vis-a-vis the primary Federal programs." This discussion, however, appears to follow the reasoning of Justice Stevens's dissent in *Soto-Lopez, supra,* 476 U.S. at pages 916-918 [90 L.Ed.2d at pages 914-915]. He argued that the narrower the special benefit, the less is the equal protection concern. This argument fails to take into account the apparent view of the majority of the high court that however narrow the benefits, there is no legitimate justification for limiting them to long-term residents.

■ Because the statutes at issue here are closely analogous to those reviewed in *Hooper* (*supra,* 472 U.S. 612) and *Soto-Lopez* (*supra,* 476 U.S. 898) and because the justifications offered by the state for the statutory classification were expressly rejected in those decisions, we conclude that our statutory scheme is not rationally related to achieving a legitimate state purpose, and hence violates the federal equal protection clause.

Our decision is consistent with that of the Ninth Circuit in *Bunyan* v. *Camacho, supra,* 770 F.2d 773. There the court overturned a Guam statute according retroactive retirement credits to local government employees who were Guam residents before they started college. Applying *Hooper, supra,* 472 U.S. 612, the court determined that although Guam may legitimately decide to reward its residents who obtained higher education and entered Guamanian civil service, rewarding only "established" residents was not a legitimate purpose. It also explained that the Guam statute improperly created " 'fixed, permanent distinctions between . . . classes of concededly bona fide residents.' " (*Bunyan* v. *Camacho, supra,* 770 F.2d at p. 776.) The court, in dictum, also read *Hooper* as strongly implying that veterans'

benefits statutes that condition eligibility on state residence at the time of induction would be held violative of the equal protection clause. (*Ibid.*; see also *E. & E. Const. Co.* v. *State of Ill.* (N.D.Ill. 1987) 674 F.Supp. 269 [plaintiffs stated a claim for violation of equal protection because state statute prefers those who have resided in Illinois for 30 days for public works employment]; cf. *Hoffman* v. *City of Warwick* (1st Cir. 1990) 909 F.2d 608 [upholding seniority credit for reemployed veterans—no residency requirement].)

## IV

We affirm the decision of the Court of Appeal that to the extent Military and Veterans Code sections 890 and 980 and the yearly Budget Act limit state veterans' benefits to those who were natives or residents of the state at the time of entry into active service, these provisions are invalid as violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution.

█ " 'Where a statute is defective because of underinclusion . . . there exist two remedial alternatives: a court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion.' " (*Califano* v. *Westcott* (1979) 443 U.S. 76, 89 [61 L.Ed.2d 382, 393, 99 S.Ct. 2655], quoting conc. opn. of Harlan, J., in *Welsh* v. *United States* (1970) 398 U.S. 333, 361 [26 L.Ed.2d 308, 331, 90 S.Ct. 1792].) █ Being guided by the intent of the Legislature to aid veterans, and the agreement of the parties that extension of benefits is the appropriate remedy, we direct that the second remedial alternative be embraced.

We affirm the judgment of the Court of Appeal and remand to the Court of Appeal with directions to remand the cause to the superior court for further proceedings not inconsistent with this opinion.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.