[No. A123445. First Dist., Div. One. Apr. 10, 2009.]

GIGI MARIE SOMERS, Plaintiff and Appellant, v.
THE SUPERIOR COURT OF SAN FRANCISCO CITY AND COUNTY,
Defendant and Respondent.

**COUNSEL**

Transgender Law Center and Kristina Wertz for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

OPINION

MARCHIANO, P. J.—

## I.

## INTRODUCTION

Plaintiff Gigi Marie Somers (Somers) appeals from an order denying her petition for change of gender on her California birth certificate under Health and Safety Code section 103425.[1] The court denied the petition on the basis that the statute requires a petitioner to file in the county of his or her residence, and plaintiff resides in Kansas. Kansas does not permit a change of gender on a birth certificate for plaintiff. We hold that this requirement impermissibly denies California-born transgender individuals who reside outside of California the same right to issuance of a new California birth certificate as is afforded to California-born transgender individuals residing in California. Accordingly, we reverse.

## II.

## BACKGROUND

Somers was born in Los Angeles, California, on September 12, 1941, and was issued a California birth certificate, which identifies her sex as male. In 2005, Somers underwent gender reassignment surgery. She subsequently obtained an order from the Leavenworth County District Court in Kansas, where she resides, legally changing her name to Gigi Marie Somers. Somers then obtained a Kansas driver's license, reflecting her new name, and indicating her sex as female. She also obtained a Medicare card reflecting her new name and gender.

In 2006, plaintiff sought advice from two Kansas attorneys regarding changing her birth certificate. Both advised her that Kansas law does not permit issuance of a new birth certificate to reflect a change of gender. Additionally, one attorney indicated that "Ms. Somers as a matter of law does not have the ability in the state of Kansas to alter her birth certificate because she is not a Kansas born resident."

On January 30, 2008, Somers filed a petition under section 103425 in San Francisco Superior Court for change of gender and issuance of a new California birth certificate. Somers included a declaration from her physician indicating that she had undergone gender reassignment surgery, and a copy of the Kansas order for name change. She also filed her declaration and the

---

[1] All further statutory references are to the Health and Safety Code.

declaration of one of her Kansas attorneys, indicating that she could not obtain the relief sought in Kansas.

The court held a hearing on March 4, 2008, at which Somers personally appeared. No objections to the petition were filed.[2] The court denied the petition on the basis that Somers was not a resident of California, stating, "I still am having an issue with the residency here. I'm not totally convinced by the paperwork that we can overcome that." This timely appeal followed.

## III.

## DISCUSSION

Somers urges that the statutory requirement that she file her petition for a new California birth certificate under section 103425 in the superior court of her county of residence, when she resided outside California, violated her equal protection rights under the Fourteenth Amendment and the California Constitution. The court indicated in its order that it denied the petition because "[plaintiff] does not reside in the County of San Francisco, nor in the State of California. . . ." Because this appeal presents a pure question of law involving the interpretation and constitutionality of a statute, we conduct a de novo review. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *People v. Superior Court (Mudge)* (1997) 54 Cal.App.4th 407, 411 [62 Cal.Rptr.2d 721].)

A birth certificate is a vital, primary source of personal identification, necessary to obtain other forms of identification such as a Social Security card or passport.

We look first to the California statutory procedures for obtaining a new birth certificate to reflect a change in gender. Section 103425 provides: "Whenever a person born in this state has undergone surgical treatment for the purpose of altering his or her sexual characteristics to those of the opposite sex, a new birth certificate may be prepared for the person reflecting the change of gender and any change of name accomplished by an order of a court of this state, another state, the District of Columbia, or any territory of the United States. A petition for the issuance of a new birth certificate in those cases shall be filed with the superior court of the county where the petitioner resides."[3] Section 103430 provides in part: "The petition shall be

---

[2] Likewise, there is no respondent's brief on appeal. Section 103430 provides that "objections may be filed by any person who can, in those objections, show to the court good reason against the change of birth certificate." (§ 103430, subd. (b).)

[3] We note that this statute is neither new nor unique. The initial version of section 103425, former section 10475, was enacted in 1977 (Stats. 1977, ch. 1086, § 2, p. 3493). The majority of states have similar statutes allowing amendment of a birth certificate, or issuance of a new birth certificate, to reflect an individual's gender reassignment. (See Spade, *Documenting*

accompanied by an affidavit of a physician documenting the sex change, and a certified copy of the court order changing the applicant's name (if applicable)."

Somers maintains, and we agree, that the trial court had jurisdiction to grant the petition. The court had, pursuant to the statutory scheme, subject matter jurisdiction to order issuance of a new California birth certificate to reflect the gender reassignment of an individual born in California. It also had personal jurisdiction over Somers, who could and did consent to the court's jurisdiction by voluntarily filing the petition and personally appearing at the hearing. (See *National Rental v. Szukhent* (1964) 375 U.S. 311, 315–316 [11 L.Ed.2d 354, 84 S.Ct. 411]; *In re Marriage of Merideth* (1982) 129 Cal.App.3d 356, 361 [180 Cal.Rptr. 909].)

■ The critical issue is whether the statutory requirement that an individual filing a petition under section 103425 for issuance of a new California birth certificate file in the county of his or her residence is a violation of the equal protection and privileges and immunities clauses as applied to nonresident transgender individuals who were born in California. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. [Citation.]" (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439–441 [87 L.Ed.2d 313, 105 S.Ct. 3249].)

■ In cases not involving suspect classifications or the alleged infringement of a fundamental interest, a statute's classification will be upheld "if it bears a rational relationship to a legitimate state purpose. [Citations.] But if the statutory scheme imposes a suspect classification, such as one based on race [citation], or a classification which infringes on a fundamental interest, such as the right to pursue a lawful occupation [citation] or the right to vote [citation], the classification must be closely scrutinized and may be upheld only if it is necessary for the furtherance of a compelling state interest." (*Weber v. City Council* (1973) 9 Cal.3d 950, 959 [109 Cal.Rptr. 553, 513 P.2d 601].)

In determining whether the challenged provision violates Somers's right to equal protection, "we must first determine what burden of justification the

*Gender* (2008) 59 Hastings L.J. 731, appen. 3.) Additionally, California provides for issuance of a new California birth certificate for individuals whose race is described in an offensive way, in the judgment of the applicant, on their birth certificates (§ 103350) and for individuals who have been adopted (§ 102635). Individuals born in California who have obtained a court-ordered name change may apply for an amendment to their birth certificate. (§§ 103400, 103405.)

classification created thereby must meet, by looking to the nature of the classification and the individual interests affected." (*Memorial Hospital v. Maricopa County* (1974) 415 U.S. 250, 253 [39 L.Ed.2d 306, 94 S.Ct. 1076] (*Memorial Hospital*).) "[C]lassification does not of itself deprive a group of equal protection. [Citation.] However, the classification must be based upon some difference between the classes which is pertinent to the purpose for which the legislation is designed. [Citations.] 'The equal protection clause forbids the establishment of laws which arbitrarily and unreasonably create dissimilar classifications of individuals when, looking to the purpose of those laws, such individuals are similarly situated.' " (*Vincent v. State of California* (1971) 22 Cal.App.3d 566, 572 [99 Cal.Rptr. 410], quoting *Williams v. Field* (9th Cir. 1969) 416 F.2d 483, 486.)

In determining which standard to apply in analyzing the classification at issue, we first look to whether the statute "impairs fundamental rights or involves an inherently suspect classification." (*Del Monte v. Wilson* (1992) 1 Cal.4th 1009, 1014 [4 Cal.Rptr.2d 826, 824 P.2d 632].) The statute's require-ment that an individual file a section 103425 petition in the county of his or her residence operates to deny California-born transgender individuals who reside outside of California the same right to issuance of a new California birth certificate as is afforded to California-born transgender individuals residing in California. Thus, the classification potentially implicates "the constitutionally guaranteed right of interstate travel . . . ." (*Memorial Hospital, supra*, 415 U.S. at p. 254.)

■ The right to travel from one state to another is "firmly embedded in our jurisprudence." (*Saenz v. Roe* (1999) 526 U.S. 489, 498 [143 L.Ed.2d 689, 119 S.Ct. 1518] (*Saenz*); see *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1096–1097 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) The right has three components: "[T]he right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." (*Saenz, supra*, at p. 500.) The second component of the right to travel is "expressly protected by . . . Article IV, § 2 [of the Constitution, which] provides: [¶] 'The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.' [¶] . . . This provision removes 'from the citizens of each State the disabilities of alienage in the other States.' " (*Saenz, supra*, at p. 501, quoting *Paul v. Virginia* (1868) 75 U.S. 168, 180 [19 L.Ed. 357], overruled in part on other grounds in *U. S. v. Underwriters Assn.* (1944) 322 U.S. 533 [88 L.Ed. 1440, 64 S.Ct. 1162].) The Fourteenth Amendment likewise protects this right: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State

shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ." (U.S. Const., 14th Amend., § 1.)

The Constitution thus provides "important protections for nonresidents who enter a State whether to obtain employment, [citation], to procure medical services, [citation], or even to engage in commercial shrimp fishing, [citation]." (*Saenz, supra,* 526 U.S. at p. 502.) Additionally, many cases have held that durational residency requirements abridge the right to travel. Courts have found unconstitutional laws limiting the amount of welfare benefits newly arrived residents can receive, or denying them free nonemergency hospitalization. (See, e.g., *Shapiro v. Thompson* (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322], overruled on other grounds in *Edelman v. Jordan* (1974) 415 U.S. 651 [39 L.Ed.2d 662, 94 S.Ct. 1347]; *Memorial Hospital, supra,* 415 U.S. 250; *Saenz, supra,* 526 U.S. 489.)

While no California court has addressed this issue in the context of a petition for issuance of a new birth certificate, at least one out-of-state court has. (*In re R.W. Heilig* (2003) 372 Md. 692, 719 [816 A.2d 68] (*Heilig*).) In *Heilig,* petitioner was a Maryland resident born in Pennsylvania who was " 'transitioning from male to female.' " (816 A.2d at p. 69.) She sought to invoke the equitable jurisdiction of the court to obtain an order changing her name and " 'sexual identity.' " (*Ibid.*) A Maryland statute "directs the Secretary of Health and Mental Hygiene, upon receipt of a court order indicating that the sex of an individual born in Maryland 'has been changed by surgical procedure,' to amend that person's Maryland birth certificate accordingly . . . ." (*Ibid.*; Md. Code Ann., [Health–Gen.] § 4-214(b)(5).) The petitioner acknowledged that Maryland courts "had no authority over officials from other States . . . but contended that, under equal protection principles, he was entitled to a determination . . . that his gender had changed." (*Heilig,* at p. 71.) The court held that "the jurisdiction of Maryland courts is not limited by the birthplace of the parties seeking relief . . . [.] [B]y recognizing the authority of the Circuit Courts to enter gender-change declarations with respect to persons born in Maryland, [the Maryland legislature] necessarily recognizes as well their jurisdiction to enter such orders on behalf of anyone properly before the court. Indeed, any other conclusion would raise serious Constitutional issues under the Equal Protection and Privileges and Immunities Clause of the 14th Amendment to the United States Constitution." (*Id.* at pp. 84–85.)

While section 103425 on its face does not appear to create a class of petitioners that is treated differently, the requirement that individuals seeking a new birth certificate under the section file their petition in their county of residence acts to deny the rights created under the statute to the class of California-born transgender individuals who reside outside of California.

Those individuals for whose benefit the statute was enacted who reside outside of California are effectively denied the right to issuance of a new birth certificate. Whether or not the state in which they reside has a similar statute, "[o]bviously, the Legislature cannot direct officials in other States to change birth certificates issued in those States . . . ." (*Heilig, supra,* 816 A.2d at p. 84.) Accordingly, section 103425 penalizes California-born transgender individuals for moving to a state outside of California.

Our review of the legislative history of section 103425 reveals no reason for the requirement that individuals seeking issuance of a new California birth certificate file the petition in their county of residence. The bill first introducing this legislation did not include the requirement that a *court* order the issuance of a new birth certificate after gender reassignment surgery. The initial version provided that "[a]n application for the issuance of a new birth certificate in such cases shall be filed with the State Registrar . . . ." (Assem. Bill No. 385 (1977–1978 Reg. Sess.) as introduced Feb. 2, 1977.) After the Senate Committee on the Judiciary commented that issuance of a new birth certificate reflecting a change of name required a court order (Sen. Com. on Judiciary, com. on Assem. Bill No. 385 (1977–1978 Reg. Sess.) as amended Mar. 29, 1977, pp. 1–2), the bill was amended to require that individuals seeking new birth certificates to reflect a change of gender must file the petition in the superior courts of the counties in which they reside (Assem. Bill No. 385 (1977–1978 Reg. Sess.) as amended Aug. 16, 1977). There is no indication of the reason for the added requirement of filing in the county of residence, and no indication of any contemplation of, or reason for, treating California-born transgender individuals who reside out of state any differently from those who reside in California.[4] Section 103425 broadly includes not only all other states, but also "the District of Columbia, or any territory of the United States," but leaves an unfair statutory lacuna by not providing a remedy for persons born in California who now reside in a jurisdiction where a petition for gender change cannot be filed.

▮ We discern no compelling state interest in treating California-born transgender individuals who reside out of state differently from

---

[4] Apparently recognizing this inherent unfairness, on February 27, 2009, Assembly Member Ted Lieu introduced Assembly Bill No. 1185, a bill to amend section 103425 to allow an individual to file a petition for issuance of a new birth certificate reflecting a change of gender in the county of one's birth. The proposed amended section 103425 would read: "Whenever a person born in this state has undergone surgical treatment for the purpose of altering his or her sexual characteristics to those of the opposite sex, a new birth certificate may be prepared for the person reflecting the change of gender and any change of name accomplished by an order of a court of this state, another state, the District of Columbia, or any territory of the United States. A petition for the issuance of a new birth certificate in those cases shall be filed with the superior court of the county where the petitioner resides *or the county in which the petitioner was born.*" (Assem. Bill No. 1185 (2009–2010 Reg. Sess.) as introduced Feb. 27, 2009.)

California-born transgender individuals who reside in California when members of either class seek issuance of a new California birth certificate under section 103425. Even if fundamental constitutional rights were not implicated by this classification, we perceive no rational basis for the disparate treatment. Accordingly, the requirement that a petitioner under section 103425 file the petition in the county of his or her residence unconstitutionally denies California-born transgender individuals residing outside California the same rights that California-born transgender individuals residing in California have under section 103425.

## IV.

## DISPOSITION

The order is reversed, and the matter remanded in order that Somers's petition for issuance of a new California birth certificate under section 103425 be considered on the merits.

Margulies, J., and Graham, J.,[*] concurred.

---

[*]Retired judge of the Marin Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.