Loren R. SMITH, Appellant,

v.

BOARD OF REGENTS OF the UNIVERSITY OF HOUSTON SYSTEM, Mario C. Lucchesi, and Patricia M. Cavanaugh, Appellees.

No. 01–93–00108–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 10, 1994.

Rehearing Overruled April 28, 1994.

Loren R. Smith, Houston, for appellant.

Dan Morales, Will Pryor, Mary F. Keller, Jorge Vega, James C. Todd, Austin, for appellees.

Before OLIVER–PARROTT, C.J., and MIRABAL and HUTSON–DUNN, JJ.

## OPINION

HUTSON–DUNN, Justice.

Plaintiff, Loren R. Smith, a law student at the University of Houston[1], brings this action challenging the constitutionality of the policy of the University of Houston and the Coordinating Board, Texas College and University System, for determining whether a nonresident student may be reclassified as a resident to qualify for resident tuition status.

1. Since the filing of this lawsuit, Smith has graduated from the University of Houston Law Cen-

## BACKGROUND

Smith was born in Indianapolis, Indiana, on May 7, 1963. He received a Bachelor of Science degree from Indiana University in August 1985. After graduation, Smith moved to Stow, Ohio, and worked full time for two years as a systems analyst. Smith then decided to go to law school, and applied to schools in both Texas and California. Plaintiff was accepted to the University of Houston, resigned his position in Ohio, and moved to Texas in August 1987. Two weeks after arriving in Texas, Smith began his studies as a full-time student at the University of Houston Law Center.

In August 1988, after attending the University of Houston for one year, Smith applied to the university to be reclassified as a resident for tuition purposes. His request was refused. He filed applications renewing his request for reclassification before each of his remaining semesters at the University of Houston. Each of these requests was also denied. After his application was refused for the fall of 1990, Smith filed this lawsuit. Because Smith was classified as a nonresident, he paid tuition totalling $14,520 during his tenure in law school. Had he been classified as a resident, he would have paid $6,228.

While in law school, Smith worked part-time for a law firm in Houston. During the summers, he was able to work full-time at the law firm. However, he never maintained long term, full-time employment. Smith had a Texas driver's license, was registered to vote in Texas, rented an apartment in Texas, and registered his car in Texas. He testified at trial that while a law student, he only left the state once. When asked why he came to Texas when he first applied for reclassification in the fall of 1988, Smith answered, "to live, attend school, and work." When he applied for reclassification in the fall of 1989, Smith declared that his purpose in coming to Texas was "to attend law school, and live and work here after graduation." When he applied in the spring of 1990 he declared that he came to Texas "to reside."

ter.

## SUMMARY OF SMITH'S CONTENTIONS

In points of error two, three, and eleven, Smith contends that the reclassification policy violates the due process clause of the fourteenth amendment of the United States Constitution because 1) it creates an irrebuttable presumption of nonresidency, and 2) it is arbitrary and capricious.

In points of error one, four, five, six, seven, and eight, Smith also argues that the State's reclassification policy violates the equal protection clause of the fourteenth amendment of the United States because it is not a bona fide residency requirement. He contends that the reclassification policy infringes upon the fundamental right to travel, and thus is subject to the strict scrutiny standard of review, rather than the more deferential rational basis analysis. In points of error nine and ten, Smith further argues that the reclassification policy violates the due process and equal protection clauses of the Texas Constitution because it may be construed to provide greater protection than the United States Constitution. Finally, in points of error twelve and thirteen, Smith argues that the University breached a contract, either implied-in-law or implied-in-fact, by failing to reclassify him as a resident.

Smith believes that he is entitled to a refund of the difference between the amount he paid for nonresident tuition and the amount he would have paid had he been classified as a resident. In his fourteenth point of error, he also alleges that he is entitled to recover attorney's fees.

## THE APPLICABLE STATUTES AND RULES

The statutes at issue in this case provide:

(f) An individual who is 18 years of age or over who resides out of state or who has come from outside Texas and who registers in an educational institution before having resided in Texas for a 12–month period shall be classified as a nonresident student.

TEX.EDUC.CODE ANN. § 54.052(f) (Vernon 1987).

A nonresident student classification is presumed to be correct as long as the residence of the individual in the state is primarily for the purpose of attending an educational institution. After residing in Texas for at least twelve (12) months, a nonresident may be reclassified as a resident student as provided in the rules and regulations adopted by the Coordinating Board, Texas College and University System. Any individual reclassified as a resident student is entitled to pay the tuition fee for a resident of Texas at any subsequent registration as long as he continues to maintain his legal residence in Texas.

TEX.EDUC.CODE ANN. § 54.054 (Vernon 1987).

As authorized by the statute above, the Coordinating Board, Texas College and University System promulgated the following policy on reclassification:

Persons classified as nonresidents upon first enrollment in an institution of higher education are presumed to be nonresidents for the period during which they continue as students. If such nonresident students withdraw from school and reside in the state while gainfully employed for a period of 12 months, upon reentry into an institution of higher education they will be entitled to be reclassified as residents for tuition purposes. Accumulations of summer and other vacation periods do not satisfy this requirement. Reclassification to resident status after residing in the state for 12 months cannot be based solely upon the student's or the student's spouse's employment, registration to vote, registration of a motor vehicle and payment of personal property taxes thereon, or the securing of a Texas driver's license. *The presumption of "nonresident" is not a conclusive presumption, however, and other facts may be considered to determine if the presumption has been overcome. Material to this determination are business or personal facts or actions unequivocally indicative of a fixed intention to reside permanently in the state. Such facts may include, but are not limited to, the length of residence and full-time employment prior to enrolling in the institution, the fact of full-time employment prior to enrolling in the insti-*

*tution, the fact of full-time employment and the nature of such employment while a student, purchase of a homestead with substantial down payment, or dependency upon a parent or guardian who has resided in Texas for at least 12 month immediately preceding the student's enrollment.* All of these facts are weighed in the light of the fact that a student's residence while in school is primarily for the purpose of education and not to establish residence, and that decisions of an individual as to residence are generally made after the completion of an education and not before. Students classified as nonresident students shall be considered to retain that status until they make written application for reclassification in the form prescribed by the institution and are officially reclassified in writing as residents of Texas by the proper administrative officers of the institution. Application for reclassification must be submitted prior to the official census date of the relevant term.

TEX.ADMIN.CODE § 21.23 (West 1993–94) (emphasis added).

It is important to note that Smith does not challenge his initial classification as a nonresident, but contends that he should have been reclassified as a resident when he first applied for reclassification in the fall of 1988. Therefore, the constitutionality of the first statute listed above is not an issue in this case. The issue presented to this Court is whether the rules regarding the reclassification of nonresidents pass constitutional muster. In an effort to resolve this issue, we will discuss each of Smith's claims of constitutional deprivation separately.

## DUE PROCESS

■ Smith claims that the reclassification policy violates his right to due process because it creates an irrebuttable presumption of nonresidency that cannot be overcome while remaining a full-time student. Smith's claim is based on the landmark case of *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). In *Vlandis,* the Court declared a Connecticut statute unconstitutional because it permanently classified students as nonresidents for tuition purposes on the basis of their legal address at the time they applied to the university.

> [I]t is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means for making the crucial evaluation.

*Vlandis,* 412 U.S. at 452, 93 S.Ct. at 2236.

Unlike the Connecticut statute, the reclassification rules in Texas do not permanently "freeze" a student in a nonresident status based on the student's classification at the time of application to the university. A student may obtain reclassification in any number of ways. First, according to the policy on reclassification, a student will be entitled to reclassification if he or she withdraws from the University for a period of twelve months, and resides in Texas while gainfully employed. Secondly, the statute lists several factors that may result in reclassification. For example, a student may work full time in Texas, while enrolled as a student, or may purchase a homestead in Texas. Dependency on a parent or guardian who has resided in Texas for at least 12 months is also a factor that may result in reclassification. However, the factors listed in the statute are nonexclusive; therefore, presumably there are other circumstances that would result in reclassification. The rule in question also indicates that the "presumption of 'nonresident' is not a conclusive presumption," and may be overcome by showing "facts or actions unequivocally indicative of a fixed intention to reside permanently in the state."

In *Black v. Sullivan,* 561 F.Supp. 1050, 1064–65 (D.Maine 1983), the plaintiffs claimed that a similar classification policy created an irrebuttable presumption that full-time, unmarried students were unable to overcome. The court rejected the claim because the rules on their face did not exclude such persons from reclassification, and the plaintiffs were given a fair opportunity to demonstrate entitlement to reclassification.

We conclude that, though the burden of proof may be difficult for students such as Smith to overcome, the rules promulgated by

the Coordinating Board, Texas College and University System, do not create an irrebuttable presumption.

■ Smith also contends that the reclassification policy violates his right to due process because it is arbitrary and capricious. Smith apparently contends that because he presented sufficient evidence to show that he was a resident of Texas for other purposes, (i.e., voting, driver's license, car registration) he should also be considered a resident for purposes of in-state tuition. We disagree. In *Michelson v. Cox*, 476 F.Supp. 1315, 1318–20 (S.D.Iowa 1979), the plaintiff introduced evidence that he was registered to vote in Iowa, had obtained an Iowa driver's license, had registered his car in Iowa, paid rent in Iowa, paid income taxes in Iowa, and intended to take the Iowa bar examination. Plaintiff claimed that this evidence, coupled with his statement that he intended to remain in Iowa, was sufficient to overcome the presumption of nonresidency, and that the school's refusal to reclassify him was arbitrary and capricious.

The court in *Michelson* rejected this argument stating:

> To accept plaintiff's argument would require the University to reclassify as a resident every student who, after attending the University for a year, makes a self-serving declaration that he intends to reside in Iowa permanently and performs a series of "objective" acts, some of which are required by law and all of which are customarily done by some nonresident students who do not intend to remain in Iowa after graduation. This would, in effect, create a presumption that any such student *is* a bona fide Iowa resident, thus seriously jeopardizing the University's nonresident tuition program and consequently its entire financial structure. It would remove the tuition decision from the hands of the University and place it in the student's.

*Michelson*, 476 F.Supp. at 1320.

In *Spielberg v. Board of Regents, University of Michigan*, 601 F.Supp. 994, 999–1001 (E.D.Mich.1985), the plaintiff applied for reclassification and introduced proof that her car was registered and insured in Michigan, that she had a Michigan driver's license, that she voted in Michigan, that she had a Michigan bank account, and that she paid taxes as a Michigan resident. Plaintiff contended that the university's failure to reclassify her in light of this evidence was arbitrary and capricious. The court, citing *Michelson*, rejected plaintiff's arguments and stated, "[w]hile it is true that the evidence plaintiff offered is consistent with an intent to remain in Michigan, it is equally consistent with an intent to leave Michigan upon graduation." *Id.* at 1001.

We find that the evidence presented by Smith is not such that the refusal to reclassify him as a resident was arbitrary and capricious. A great many nonresident students in Texas obtain Texas driver's licenses, register their cars in Texas, obtain insurance in Texas, rent apartments in Texas, and work in Texas on summer breaks. Nevertheless, many of those students have no intention of remaining in Texas after graduation. Therefore, the refusal to reclassify students as residents automatically based on such evidence is neither arbitrary, nor capricious.

Because we find that the reclassification rules do not create an irrebuttable presumption of nonresidency, and are not arbitrary or capricious, Smith's points of error relating to due process under the fourteenth amendment of the United States Constitution are overruled.

## EQUAL PROTECTION

■ Smith also claims the State's reclassification policy, and particularly its one-year waiting period, violates his right to equal protection of the laws as guaranteed by the fourteenth amendment of the United States Constitution. Smith argues that the policy impinges on the fundamental right to travel, and should be subject to a strict scrutiny standard of review.

The first case to strike down a durational residency requirement on the grounds that it impinged upon the fundamental right to travel was *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In *Shapiro*, the Court struck down a one-year waiting period to be eligible for welfare bene-

fits, holding that it penalized the fundamental right to travel. 394 U.S. at 629–31, 89 S.Ct. at 1328–29. The case of *Dunn v. Blumstein,* 405 U.S. 330, 360, 92 S.Ct. 995, 1012, 31 L.Ed.2d 274 (1972), struck down a one-year waiting period to vote in state elections. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 269, 94 S.Ct. 1076, 1088, 39 L.Ed.2d 306 (1974), struck down a statute that required a one-year waiting period before a new resident could apply for subsidized medical care. As can be seen from these cases, the earliest "right to travel" cases involved the denial of basic rights and necessities to newcomers in the state.

More recent "right to travel" cases have involved statutes that create permanent distinctions among admittedly bona fide residents based on the length or timing of their residence in the state. In *Zobel v. Williams,* 457 U.S. 55, 65, 102 S.Ct. 2309, 2315, 72 L.Ed.2d 672 (1982), the state of Alaska sought to apportion certain oil dividend benefits among its residents according to how long the resident had resided in the state. The Court did not reach the right to travel issue because it found that the statute violated even the minimum standard of review because the state was discriminating among its own residents. In *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 911, 106 S.Ct. 2317, 2325, 90 L.Ed.2d 899 (1986), the Court invalidated a New York statute that awarded a civil service employment preference to veterans of New York who were also New York residents at the time they served their country. The Court held that this statute violated equal protection because it favored prior resident veterans over resident veterans who had moved to New York after serving their country. *Id.* The Court found that such a distinction between bona fide residents based on the length of their residency penalized persons who exercised their constitutional right of interstate migration. *Id.*

We find the reclassification statute distinguishable from either of the two situations in which a statute has been invalidated because it impinged upon the fundamental right to travel. The reclassification statute, and its one-year waiting period, does not involve a basic right or necessity, such as those found in the *Shapiro* line of cases. The right to receive a lower tuition rate at a state university cannot be equated to the right to receive welfare benefits, medical care, or the right to vote. Neither does the reclassification statute, on its face, seek to apportion or limit the benefits accorded to the citizens of Texas based on the length or timing of their residence. Instead, the reclassification policy seeks to establish which students are in fact bona fide residents of the state of Texas.

We have found no cases that have invalidated a residency requirement for tuition purposes on the basis that it burdens the right to interstate travel. The first case to reject a "right to travel" argument in the context of nonresident tuition was *Starns v. Malkerson,* 326 F.Supp. 234, 328 (D.Minn. 1970), *summarily aff'd,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971). *Hooban v. Boling,* 503 F.2d 648, 651 (6th Cir.1974), *cert. denied,* 421 U.S. 920, 95 S.Ct. 1585, 43 L.Ed.2d 788 (1975), also rejected a "right to travel" contention in the context of nonresident tuition as "completely without merit." *Id.* In *Weaver v. Kelton,* 357 F.Supp. 1106, 1110 (E.D.Texas 1973), the very same statute involved in the present case was upheld by the federal district court. In so doing, the court concluded that the right to interstate travel was not involved.

Furthermore, if we determine that the reclassification statute creates a test of bona fide residency, we must conclude that the right to travel is not burdened, "for any person is free to move to a State and to establish residence there." *Martinez v. Bynum,* 461 U.S. 321, 328, 103 S.Ct. 1838, 1842, 75 L.Ed.2d 879 (1983).

In *Vlandis,* the Court recognized that

[A] State has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis.... *The State can establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, but who have come there solely for*

*educational purposes, cannot take advantage of the in-state tuition.*

*Vlandis,* 412 U.S. at 452–54, 93 S.Ct. at 2236–37. (emphasis added).

■ Thus, the critical issue this Court must decide is whether the reclassification statute, and the criteria it considers to determine residency for tuition purposes, sets up a test to determine bona fide residency. "Although the meaning may vary according to context, 'residence' generally requires both physical presence and an intention to remain." *Martinez,* 461 U.S. at 330, 103 S.Ct. at 1843.

We find that the criteria set forth in the reclassification rules allows the state to make "virtually certain" that the students to whom it grants the benefits of residency are in fact bona fide Texas residents. For example, it is reasonable to assume that a nonresident student who works full-time has come to the state for the primary purpose of working in the state and making it his home, and not for the primary purpose of taking advantage of Texas' educational system. However, a full-time student who is claiming resident status may be motivated solely by a desire to escape the tuition surcharge, and not by any particular ties to the state. Likewise, it is reasonable to assume that a nonresident student who is a dependent of a Texas resident, or a nonresident student who purchases a homestead in Texas has established some sort of permanent ties to the state, evidencing an intent to remain in the state. We are not willing to require the state universities to reclassify every student who comes from out-of-state, obtains a Texas driver's license and/or other easily obtainable indicia of residency, and declares his intent to remain in the state after graduation. Thus, we find that the factors set forth in the reclassification statute create a test of bona fide residency for the purpose of resident tuition status. Smith's points of error relating to equal protection under the fourteenth amendment of the United States Constitution are overruled.

**2.** Given our disposition of this cause, we do not address Smith's points of error 15 through 20,

## TEXAS CONSTITUTIONAL RIGHTS

■ Smith also argues that even if we determine that the reclassification policy does not violate the due process or equal protection clauses of the United States Constitution, we may nonetheless find that the Texas Constitution has been violated. We agree that the Texas Constitution may be interpreted to provide greater rights than the United States Constitution. *Davenport v. Garcia,* 834 S.W.2d 4, 11–12 (Tex.1992). However, Smith has cited no case law to indicate that such an interpretation is required in this case. Smith's points of error under the due process and equal protection clauses of the Texas Constitution are overruled.

## BREACH OF CONTRACT

■ Smith has also claimed that he had a contract with the University, and that the University breached the contract by failing to reclassify him as a resident. Even if we were to assume that a contract existed between Smith and the University, we would necessarily conclude that there was no breach of that contract because the University correctly classified Smith as a nonresident for purposes of tuition. Smith's points of error concerning breach of contract are overruled.

## CONCLUSION

Because we have determined that the reclassification rules promulgated by the Coordinating Board, Texas College and University System, do not set up an irrebuttable presumption of nonresidency, but in fact create a test of bona fide residency for purposes of tuition, the judgment of the trial court is affirmed.[2]

relating to the issues of sovereign immunity.