

## Office of the Attorney General
### State of Texas

**DAN MORALES**
**ATTORNEY GENERAL**

March 12, 1998

Mr. Ray Farabee
Vice Chancellor and General Counsel
The University of Texas System
201 West Seventh Street
Austin, Texas 78701-2981

Opinion No. DM-468

Re: Whether Education Code section 54.203 violates the Equal Protection Clause of the United States Constitution by exempting from dues, fees, and charges at an institution of higher education only those veterans who were Texas citizens at the time they entered the service, and related questions (RQ-937)

Dear Mr. Farabee:

You ask about the constitutionality of Education Code section 54.203(a), which requires the governing board of an institution of higher education to exempt from certain "dues, fees, and charges" every honorably discharged, resident veteran[1] who resided in Texas at the time he or she entered the service. You appear concerned that distinguishing honorably discharged, resident veterans who resided in Texas at the time they entered the service from honorably discharged, resident veterans who did not reside in Texas at the time they entered the service may contravene the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. We believe a court would conclude that the statutory classification is unconstitutional. We further believe a court would remedy the unconstitutionality by extending the exemption to all honorably discharged, resident veterans.

You also ask whether a determination that section 54.203(a) is unconstitutional will be applied retrospectively. We are ultimately unable to answer this question, although we provide the test we believe a court would use to resolve the issue. Finally, you ask whether a particular student, a resident veteran who was not a citizen of this state at the time he entered the service, is entitled to a refund of the tuition and fees he has paid under protest. Because we cannot determine whether a determination that the subsection is unconstitutional will be applied retrospectively, we cannot answer this question.

---

[1]Throughout this opinion, we use the term "resident veteran" to refer to a veteran who has satisfied the statutory durational residence requirement. For instance, with respect to Education Code section 54.203(a), a resident veteran is one who has resided in Texas for at least one year before he or she registers for university.

We begin by describing the statute at issue. Education Code section 54.203(a) requires the governing board of an institution of higher education to exempt certain resident veterans from the payment of specified costs:

> The governing board of each institution of higher education shall exempt the following persons from the payment of all dues, fees, and charges, including fees for correspondence courses but excluding property deposit fees, student services fees, and any fees or charges for lodging, board, or clothing, *provided the persons seeking the exemptions were citizens of Texas at the time they entered the services indicated* and have resided in Texas for at least the period of 12 months before the date of registration:
>
> (1) all nurses and honorably discharged members of the armed forces of the United States who served during the Spanish-American War or during World War I;
>
> (2) all nurses, members of the Women's Army Auxiliary Corps, members of the Women's Auxiliary Volunteer Emergency Service, and all honorably discharged members of the armed forces of the United States who served during World War II . . . ;
>
> (3) all honorably discharged men and women of the armed forces of the United States who served during the . . . Korean War; and
>
> (4) all persons who were honorably discharged from the armed forces of the United States after serving on active military duty . . . for more than 180 days and who served a portion of their active duty during:
>
> > (A) the Cold War . . . ;
> >
> > (B) the Vietnam era . . . ;
> >
> > (C) the Grenada and Lebanon era . . . ;
> >
> > (D) the Panama era . . . ;
> >
> > (E) the Persian Gulf War . . . ; or
> >
> > (F) any future national emergency declared in accordance with federal law. [Emphasis added.]

Thus, to receive the exemption under section 54.203(a), an honorably discharged veteran who served during one of the listed conflicts must satisfy two statutory residence requirements. The first, a

fixed-point residence requirement, limits the exemption to those veterans who resided in Texas at the time they entered the service. The second, a durational residence requirement, limits the exemption to those veterans who have resided in Texas for at least one year before registering in an institution of higher education. You ask only about the fixed-point residence requirement.[2]

We note, as a threshold matter, that this country has a long tradition of rewarding those who have served in the armed forces by providing statutory preferences that favor veterans over nonveterans.[3] "[T]he various preferences for veterans are grounded in a '[d]esire to compensate in some measure for the disruption of a way of life . . . and to express gratitude . . . .'"[4] We are not considering the constitutionality of a statutory preference favoring veterans, however; rather, we are considering here the constitutionality of a statutory preference favoring one class of honorably discharged, resident veterans—those who satisfy Education Code section 54.203(a)'s fixed-point residence requirement—over another—those who do not satisfy the statutory fixed-point residence requirement.

The United States Supreme Court twice has struck as unconstitutional under the Fourteenth Amendment's Equal Protection Clause statutes that distinguish among veterans on the basis of fixed-point residence requirements similar to that in Education Code section 54.203(a).[5] In the most recent, *Attorney General of New York v. Soto-Lopez*,[6] the United States Supreme Court struck New York laws that "grant[] a civil service employment preference, in the form of points added to examination scores," to honorably discharged veterans who resided in New York and who resided in New York when they entered the military service.[7] The New York laws thus distinguished among

_____

[2]We do not consider in this opinion the constitutionality of section 54.203(a)'s durational residence requirement. The United States Supreme Court has distinguished between statutes that adopt a durational residence requirement and those that adopt a fixed-point residence requirement. A statute establishing a durational residence requirement requires a new resident "to reside in the State a fixed minimum period" before he or she is eligible for certain benefits available to other residents. *Zobel v. Williams*, 457 U.S. 55, 58 (1982). The asserted purpose of a durational residence requirement is to ensure that only a bona fide resident receives rights and benefits provided for residents. *Id.* A fixed-point residence requirement, on the other hand, conditions rights and benefits on residence within the state on a particular date. *See Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 904-05 (1986). While any individual may satisfy a durational residence requirement, an individual who does not meet a fixed-point residence requirement never will satisfy the requirement. *See id.* at 909 (resident who cannot meet fixed-point residence requirement is "*permanently* deprived" of receiving benefits).

[3]*See Soto-Lopez*, 476 U.S. at 910-11 (and cases cited therein); *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 620 (1985) (and cases cited therein).

[4]*Hooper*, 472 U.S. at 620 (quoting *Russell v. Hodges*, 470 F.2d 212, 218 (2d Cir. 1972)).

[5]*See Soto-Lopez*, 476 U.S. 898 (1986); *Hooper*, 472 U.S. 612 (1985).

[6]476 U.S. 898 (1986).

[7]*Id.* at 900.

honorably discharged, resident veterans on the basis of when they first established residence in the state.[8]

At a minimum,[9] the *Soto-Lopez* court held that the laws at issue did not survive even rational-basis scrutiny. In general, a classification will survive rational-basis scrutiny if the statutory classification rationally furthers a legitimate state purpose.[10] The Court found that the New York classification was irrational,[11] rejecting the State's four proffered justifications. First, the Court denied that the classification encourages New York residents to enlist during times of war, primarily because no service personnel could be sure, at the time he or she enters the service, that the legislature would amend the preference to include veterans of the conflict during which he or she served.[12] Furthermore, according to the Chief Justice, the laws do not distinguish between veterans who enlisted voluntarily and those who were drafted.[13] Second, the Court refuted New York's contention that the preference partially compensates residents for service during time of war,[14] countering that New York residents who entered the military suffered no more nor less than residents of other states who entered the military.[15] Third, the Court disagreed with the State's argument that the preference encourages honorably discharged, past-resident veterans to return to New York to

---

[8]*Id.* at 905; *see also id.* at 913 (Burger, C.J., concurring).

[9]*Soto-Lopez* is a plurality opinion. Six justices agreed that the New York statute at issue violated the Fourteenth Amendment's Equal Protection Clause, applying a rational-basis analysis. *See Del Monte v. Wilson*, 824 P.2d 632, 637 (Cal. 1992) (en banc), *cert. denied*, 506 U.S. 984 (1992). Four of the justices agreed that the statute also violated the fundamental, constitutional right to travel, requiring the state to articulate a compelling state purpose for the law. *See id.* We must rely solely upon the narrow holding upon which a majority of the Court agreed: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977).

[10]*See Zobel*, 457 U.S. at 60.

[11]*See Soto-Lopez*, 476 U.S. at 916 (White, J., concurring).

[12]*See id.* at 913 (Burger, C.J., concurring). Chief Justice Burger noted that the legislature must amend the statute to "fix both the period when 'war' is deemed to have commenced and when that war has ended." *Id.* Consequently, a New York resident may not know, at the time he or she enters the armed services, whether he or she will be entitled to the preference following a successful tour of duty and honorable discharge. *Id.*

[13]*Id.* at 914.

[14]*See id.*

[15]*Id.* (quoting *Hooper*, 472 U.S. at 621). The Chief Justice stated that "'it is difficult to grasp how [New York] residents serving in the military suffered more than residents of other States who served, so that the latter would not deserve the benefits a State bestows for national military service.'" *Id.* (quoting *Hooper*, 472 U.S. at 621).

settle.[16] While the Chief Justice conceded that the preference might have such an effect, he believed the preference also might discourage other veterans from settling in the state.[17] Fourth, the Court denied that the preference targeted a special group of veterans who know local affairs, who have learned valuable skills in the military, and who would, consequently, make exceptional public servants;[18] in the Court's view, all resident veterans possess those same attributes, regardless of where they resided when they entered the military.[19]

Ultimately, the Court determined that the State may not discriminate against a bona fide resident veteran solely on the basis of his or her date of arrival in the state:

> "The State may not favor established residents over new residents based on the view that the State may take care of 'its own,' if such is defined by prior residence. Newcomers, by establishing bona fide residence in the State, become the State's 'own' and may not be discriminated against solely on the basis of their arrival in the State after [a fixed date]."[20]

The *Soto-Lopez* decision echoes the Court's earlier opinion in *Hooper v. Bernalillo County Assessor.*[21] In *Hooper* the Court declared unconstitutional a New Mexico statute that exempted $2,000 of the taxable value of property for any honorably discharged, resident Vietnam veteran who resided in New Mexico before May 8, 1976.[22] The Court explained that the statute classified resident Vietnam veterans who resided in the State before May 8, 1976, differently from those resident veterans who arrived after that date.[23] Like the subsequent *Soto-Lopez* opinion, the *Hooper* Court determined that the statute did not survive even rational-basis scrutiny.[24] New Mexico argued that the exemption encourages veterans to settle in the State,[25] but the Court opined that the classification actually discourages veterans who had not been New Mexico residents before

---

[16]*See id.*

[17]*See id.*

[18]*See id.* at 915.

[19]*See id.*

[20]*Id.* at 915-16 (quoting *Hooper*, 472 U.S. at 623); *see also id.* at 911.

[21]472 U.S. 612 (1985).

[22]*Id.* at 614.

[23]*See id.* at 616-17.

[24]*Id.* at 621-22.

[25]*See id.* 618-19.

May 8, 1976, from moving to the State.[26] New Mexico also asserted that the classification rewards veterans for their military service,[27] but the Court insisted that a state could not do so by making "an invidious [or] irrational distinction among its residents."[28] New Mexico's distinction, like New York's in *Soto-Lopez*, was irrational in part because military service during wartime disrupts the lives of all who serve, not just those who lived in New Mexico before May 8, 1976.[29]

*Soto-Lopez* and *Hooper* provide a framework for analyzing a statutory fixed-point residence requirement that serves to demarcate among honorably discharged, resident veterans. First, these cases indicate that a court reviewing such a fixed-point residence requirement would review the resulting classification using the rationality standard. Second, although a court applying rationality analysis usually defers to the legislature's wisdom and upholds the statute, the Supreme Court in *Soto-Lopez* and *Hooper* declared irrational every justification the states offered.[30] Significantly, the Court declared, in both cases, that a state may not discriminate against a resident solely on the basis of his or her date of arrival.[31] Additionally, the Court cited, in both cases, the fact that veterans served this nation, not a particular state, as well as the fact that veterans who entered the service from one state suffered no more, or less, than veterans who entered from another state.[32]

In our opinion, in *Del Monte v. Wilson*[33] the California Supreme Court correctly applied these Supreme Court precedents to hold unconstitutional a statute markedly similar to Education Code section 54.203(a). The statute at issue in *Del Monte* premised a veteran's receipt of benefits on the fact that "at the time of entry into active duty," the veteran was a native or bona fide resident of California and had lived in the state "for six months immediately preceding entry into active duty."[34]

---

[26]*See id.* at 619-20. Repeating its admonishment in *Zobel v. Williams*, the *Hooper* Court stated that separating residents into classes "'hardly seems . . . likely . . . to persuade new [residents] that the State welcomes them and wants them to stay.'" *Id.* (quoting *Zobel*, 457 U.S. at 62 n.9).

[27]*See id.* at 620.

[28]*Id.*

[29]*Id.* at 621. Moreover, the Court saw that the annual exemption would benefit the veteran long after the disruption had occurred, and the exemption therefore could not be considered a helpful aid to a veteran struggling to readjust to civilian life. *See id.*

[30]*See Del Monte*, 824 P.2d at 635.

[31]*See Soto-Lopez*, 476 U.S. at 915-16 (quoting *Hooper*, 472 U.S. at 623).

[32]*See id.* at 914 (quoting *Hooper*, 472 U.S. at 621).

[33]824 P.2d 632 (Cal. 1992) (en banc), *cert. denied*, 506 U.S. 984 (1992).

[34]*Id.* at 633; *cf. Bunyan v. Camacho*, 770 F.2d 773, 776 (9th Cir. 1985), *cert. denied*, 477 U.S. 903 (1986). In *Bunyan* the Ninth Circuit Court of Appeals struck as unconstitutional under the Fourteenth Amendment's Equal
(continued...)

So, like the New York laws at issue in *Soto-Lopez*, the California statutes discriminated against veterans who were not California natives or who did not reside in the state at a fixed time in the past.[35] Relying upon *Soto-Lopez* and *Hooper*,[36] the California court subjected the statute to rational-basis scrutiny.[37] Regardless of the State's proffered rationales, though, Supreme Court precedent compelled the California court, it said, to declare illegitimate the statutes' central object, "that is[,] preferring long-term residents over recent migrants."[38]

---

[34](...continued)
Protection Clause a Guam statute that grants retroactive retirement credit to local-government employees who were Guam residents before they started college. *Id.* at 774. Written after the United States Supreme Court's decisions in *Zobel*, 457 U.S. 55 (1982), *see infra* note 36 (discussing *Zobel*), and *Hooper*, 472 U.S. 612 (1985), *see supra* text accompanying notes 3-5, 15, 20-29, 31-32 (discussing *Hooper*), but before the *Soto-Lopez* decision (a 1986 decision), the *Bunyan* court relied upon *Zobel* and *Hooper* in reaching its conclusion. *See Bunyan*, 770 F.2d at 775-76. "Even if Guam may legitimately decide to reward its residents who obtained a higher education and entered the Guamanian civil service," the court summarized, "rewarding only 'established' residents for such past conduct is not a legitimate purpose. . . . Furthermore, the statute's distinction between different classes of resident civil servants with college degrees is not rationally related to the asserted goal of rewarding, encouraging and compensating persons for the alleged sacrifices." *Id.* at 776.

[35]*See Del Monte*, 824 P.2d at 638. For example, according to the *Del Monte* court, the California statute would permanently disqualify from receiving benefits a disabled World War II veteran who moved to California shortly after the war, no matter how long he resided in the state, paid taxes to the state, or contributed to society. *Id.*

[36]The *Del Monte* court also relied upon *Zobel*, where the United States Supreme Court declared unconstitutional, under the Fourteenth Amendment's Equal Protection Clause, an Alaska statute that tied the amount of money a resident would receive under the state's dividend-distribution statute to the length of time he or she had lived in the state. *Zobel*, 457 U.S. at 65. The Supreme Court found that the statute did not survive rational-basis scrutiny, refuting the State of Alaska's three proffered justifications:

1.  The statutory distinctions created a financial incentive for individuals to establish and maintain residence in Alaska.

2.  The statutory distinctions furthered prudent management of the state's dividend fund.

3.  The statutory distinctions recognized that the longer a resident had lived within the state, the more he or she had contributed, tangibly and intangibly, to the state.

*See id.* at 61-64.

[37]*See Del Monte*, 824 P.2d at 638.

[38]*Id.* at 640 The court found that the state's first claim, that the distinction was justified because the state "may choose to 'take care of its own,'" failed under *Soto-Lopez*. *See Del Monte*, 824 P.2d at 638-39. Likewise, the court found that the state's second justification, that the distinction compensated and assisted those who were residents when they entered the service, failed under *Hooper*. *See id.* at 639. The court also denied that the statutory scheme primarily serves to assist veterans struggling to reintegrate into society because the statute sets no time limit on the benefits' availability. *See id.* 639-40. As a result, a veteran may receive a low-interest loan, for example, thirty years after being discharged. *See id.* at 639. The court finally refused to "observe the usual rule" that a court defer to economic
(continued...)

We believe your argument that a Texas court would not follow *Del Monte* must fail. In the first place, federal courts as well as state courts have jurisdiction over federal constitutional questions. Second, you contend that two opinions of the Texas court of appeals, *Nunez v. Autry*[39] and *Smith v. Board of Regents of University of Houston System*,[40] suggest that a Texas court would approach the question of constitutionality differently than the California court. We disagree. In *Nunez* the court affirmed the constitutionality of a Texas statute that permitted an insured or third-party liability claimant to collect from the insurance guaranty fund only if the claimant was a Texas resident at the time the claim arose.[41] The court likened the statute at issue to one that assures that only residents enjoy services provided for residents.[42] Additionally, the court determined that the statute was rationally related to the state's legitimate interest in protecting state residents, as opposed to residents of other states, from insolvent insurers.[43] Education Code section 54.203(a), on the other hand, provides a benefit to only some resident veterans. Moreover, we question whether a court would find that the state has a legitimate interest in making this distinction. *Smith* also is consistent with the *Del Monte* decision. In *Smith* the court declared constitutional a statute permitting a nonresident student in a state institution of higher education to be reclassified as a resident, and thus be eligible for resident tuition rates, only after the student had resided in Texas for at least twelve months.[44] By contrast to the statute at issue in *Soto-Lopez*, according the *Smith* court, the statute in *Smith* "seeks to establish which students are in fact bona fide residents of the state of Texas":[45] it does not "seek to . . . limit the benefits accorded to the citizens of Texas based on the length or timing of their residence."[46]

Consequently, we believe a court would conclude that Education Code section 54.203(a) is unconstitutional because it invidiously or irrationally discriminates against honorably discharged, resident veterans who did not reside in Texas at the time they entered the service. Using the rational-basis standard, we believe a court would consider all of Texas' proffered rationalizations, but we can think of none that the Supreme Court has not already declared insufficient to justify the

---

[38](...continued)
legislation that is claimed to violate the Equal Protection Clause. *See id.* at 640.

[39]884 S.W.2d 199 (Tex. App.–Austin 1994, no writ).

[40]874 S.W.2d 706 (Tex. App.–Houston [1st Dist.] 1994, writ denied), *cert. denied*, 514 U.S. 1111 (1995).

[41]*See Nunez*, 884 S.W.2d at 204.

[42]*See id.* at 203-04.

[43]*See id.* at 204.

[44]*See Smith*, 874 S.W.2d at 708.

[45]*Id.* at 711.

[46]*Id.*

classification. In particular, we do not think a court would deem discrimination against one group of honorably discharged, resident veterans rationally related to saving the state money.[47] The United States Supreme Court has refused to defer to fixed-point residence requirements even though the state justifies the requirement on its power to regulate its economic affairs.[48]

Having concluded that a court probably would decide that Education Code section 54.203(a) unconstitutionally distinguishes between honorably discharged, resident veterans on the basis of a fixed-point residence requirement, we proceed to consider whether a court would strike the entire section or only the fixed-point residence requirement. Under the former option, no veteran would be eligible for the tuition exemption. Conversely, under the latter option, every honorably discharged, resident veteran would be eligible for the tuition exemption.

We believe a court would conclude that the legislature intended the limitation at issue here to be severable from the remainder of the subsection, and the court accordingly would invalidate only the offending fixed-point residence requirement. The remainder of section 54.203(a) would be left intact, and the court thus would extend the tuition exemption to every honorably discharged veteran who satisfies the statutory durational residence requirement.[49] In the 1959 legislation that

---

[47]The legislature added the fixed-point residence requirement to Education Code section 54.203(a)'s statutory predecessor in 1959. See Act of July 15, 1959, 56th Leg., 2d C.S., ch. 12, § 2, 1959 Tex. Gen. Laws 99, 100-01. Although we were unable to locate any legislative history specifying the purpose for the fixed-point residence requirement, we deduce that the legislature was motivated by a desire to save the state money. But see infra note 48 (recounting Representatives Willis' and Raymond's testimony to the House Committee on Higher Education, 74th Legislature).

[48]See Del Monte, 824 P.2d at 640. Additionally, in response to your claim that striking only the fixed-point residence requirement, as opposed to section 54.203(a) in its entirety, will cost the state too much money, we note Representative Doyle Willis' 1995 response to a comment that the veterans' tuition-exemption statutes cost institutions of higher education over $9.5 million in tuition waivers: "[The veterans in this State] are all . . . good men. . . . Anything we can do for them isn't too much." Hearings on S.B. 114 Before the House Comm. on Higher Educ., 74th Leg., R.S. (Feb. 14, 1995) (testimony of Representative Willis) (tape available from House Video/Audio Services Office). Representative Raymond responded similarly: "[It is] a small price to pay for . . . the service that these . . . citizens of our state have given to keep this country free." Id. (statement of Representative Raymond). A witness testifying in 1995 further pointed out that the statutes do not exempt veterans from paying fees such as student services fees and locker fees, and so, according to the witness, veterans actually are a source of revenue to the institutions of higher education. See Hearings on S.B. 114 Before the House Comm. on Higher Educ., 74th Leg., R.S. (Mar. 28, 1995) (testimony of Bill McLemore, representing Texas Coalition of Veterans' Organizations) (tape available from House Video/Audio Services Office).

[49]We recognize the common-law doctrine that would void section 54.203(a) in its entirety because striking only the fixed-point residence requirement causes the statute to have a broader scope than the legislature intended. See Anderson v. Wood, 152 S.W.2d 1084, 1087 (Tex. 1941) (and sources cited therein). But we believe that the severability clause in the 1959 legislation that enacted the fixed-point residence requirement prevails over the common-law doctrine. See Act of July 15, 1959, 56th Leg., 2d C.S., ch. 12, § 4, 1959 Tex. Gen. Laws 99, 101.

inserted the fixed-point residence requirement into the statutory predecessor to Education Code section 54.203(a),[50] the legislature included a severability clause:

> If any . . . part of this Act is held to be unconstitutional . . . , such decision shall not affect the remaining portions of this Act. The Legislature hereby declares that it would have passed this Act and each . . . part thereof despite the fact that one or more . . . parts . . . be declared unconstitutional . . . .[51]

Indeed, we believe this conclusion is absolutely consistent with the legislature's purposes in creating the tuition exemption. Prior to 1959, the statutory predecessor to section 54.203(a) sought to compensate all honorably discharged veterans who were citizens of Texas for their service to the nation and for the disruption service in the military caused. For example, when the legislature first adopted the tuition exemption in 1923, it expressed its wish to benefit honorably discharged, resident veterans who "served the Nation" in World War I and who must avail themselves of getting a college education "without long delays."[52] In 1943 the legislature included honorably discharged, resident World War II veterans,[53] citing the supreme sacrifices these service men and women had made and their disrupted lives:

> The fact that there are a great many of the members of the United States Armed Forces who have already been killed in action and a great many who have been discharged from active service because of injuries received in action, or who have been discharged because of sickness or illness while in active service and now desire to attend state educational institutions of higher learning and continue in the educational pursuits in which they were engaged at the time of entering into active service, and the further fact that [tuition exemptions presently are not provided them necessitates this amendment.][54]

Similarly, in 1953 the legislature included all honorably discharged, resident Korean war veterans[55] because "a great many persons who have served in the [Korean War] have been discharged from

---

[50]See Act of July 15, 1959, 56th Leg., 2d C.S., ch. 12, § 2, 1959 Tex. Gen. Laws 99, 100-01.

[51]Id. § 4, 1959 Tex. Gen. Laws 99, 101.

[52]See Act approved Mar. 28, 1923, 38th Leg., R.S., ch. 147, §§ 1, 3, 1923 Tex. Gen. Laws 316, 316-17.

[53]See Act of Apr. 29, 1943, 48th Leg., R.S., ch. 337, § 1, 1943 Tex. Gen. Laws 568, 568-69.

[54]Id. § 2, 1943 Tex. Gen. Laws 568, 569.

[55]See Act of Mar. 24, 1953, 53d Leg., R.S., ch. 55, § 1, 1953 Tex. Gen. Laws 75, 75-76.

such service and now desire to . . . continue in the educational pursuits in which they were engaged at the time of entering into active service . . . ."[56]

You next question whether our conclusion, that a court would find that section 54.203(a) unconstitutionally excludes from the tuition exemption honorably discharged, resident veterans who were not Texas citizens at the time they entered the service, applies prospectively only or retrospectively as well as prospectively. Ultimately, we are unable to resolve this question. We believe, however, that a court would resolve the question by applying the test the Texas Supreme Court articulated in *Wessely Energy Corp. v. Jennings*:[57]

> To determine whether, and to what extent, a judicially modified rule will apply retroactively, a court should determine (1) whether the holding decided an issue of first impression not clearly foreshadowed by prior decisions; (2) whether retroactive operation will further or retard the holding in question; and (3) whether a retroactive application could produce substantial inequitable results.[58]

Under this test, judicial modifications to a statute may apply prospectively only or retrospectively as well as prospectively; furthermore, the judicial modifications may apply retrospectively to the extent the court deems retrospective application just. Here, for example, a court may determine that section 54.203(a), modified to delete the fixed-point residence requirement, should apply retrospectively to 1959, the date the fixed-point residence requirement was adopted; to 1985, the year of the *Hooper* decision; to 1986, the year of the *Soto-Lopez* decision; or to some other date. Weighing the justice of a particular date of retrospective application is the province of a court, not this office. Moreover, each of the three prongs of the *Wessely* test involves the consideration of fact questions, which this office is not equipped to resolve.[59]

Because we cannot determine whether a conclusion that section 54.203(a) is unconstitutional will be applied retrospectively, we cannot determine whether an honorably discharged veteran who meets section 54.203(a)'s durational residence requirement is entitled to a refund of tuition he paid under protest.[60] We therefore are unable to answer your last question.

---

[56]*Id.* § 3, 1953 Tex. Gen. Laws 75, 76.

[57]736 S.W.2d 624, 628 (Tex. 1987).

[58]*Id.* (citing *Segrest v. Segrest*, 649 S.W.2d 610, 612 (Tex. 1983), *cert. denied*, 464 U.S. 894 (1983)). A federal court would apply a similar three-part test to determine whether the conclusion that Education Code section 54.203(a) should apply prospectively or retrospectively. *See Chevron v. Huson*, 404 U.S. 97, 105-08 (1971).

[59]*See, e.g.*, Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

[60]*But see Wessely*, 736 S.W.2d at 628 (quoting *Stovall v. Denno*, 388 U.S. 293, 301 (1967)) (noting that party
(continued...)

# S U M M A R Y

A court examining Education Code section 54.203(a), which exempts from the payment of tuition all honorably discharged, resident veterans who were Texas citizens at the time they enlisted, probably would find that the statute unconstitutionally discriminates against honorably discharged, resident veterans who did not reside in Texas when they entered the service. To remedy the unconstitutionality, the court probably would strike only the fixed-point residence requirement, thereby extending tuition exemption to all honorably discharged, resident veterans.

A court probably would evaluate the extent to which section 54.203(a), judicially modified to delete the unconstitutional fixed-point residence requirement, should be applied retrospectively using a three-part test. First, the court would examine whether the holding decided an issue of first impression not clearly foreshadowed by prior decisions. Second, the court would consider whether retrospective operation will further or retard the holding in question. Third, the court would determine whether a retrospective application could produce substantial inequitable results. A court would decide whether an honorably discharged veteran who meets section 54.203(a)'s durational residence requirement is entitled to a refund of tuition paid under protest after the court had established the extent to which the judicial modification of section 54.203(a) would apply retrospectively.

Yours very truly,

*Dan Morales*

D A N  M O R A L E S
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General

---

[60](...continued)
who establishes new constitutional precept should benefit from decision); Attorney General Opinion O-6833 (1945) at 5 (stating that veterans are entitled to refund for tuition wrongly paid).